## RYLANDER *v.* ALLEN.

One has the right to procure insurance on his own life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy.

Argued March 2,—Decided March 28, 1906.

Complaint.   Before Judge Littlejohn.   Sumter superior court. June 23, 1905.

The administratrix of Thomas M. Allen brought an action against the Travelers Insurance Company and Mrs. Rylander, to recover the amount of an insurance policy issued by the insurance company upon the life of Allen.   The substance of the petition, so far as material to the controlling question involved, was as follows:   On May 20, 1897, Allen procured an insurance policy on his own life in the Travelers Insurance Company, payable at his death to his estate.   On August 2, 1897, he assigned this policy to Mrs. Rylander, who had no interest, as a relative, creditor, or otherwise, in the continuance of his life.   Allen paid no premiums on the policy, but the first and all subsequent premiums were paid by Mrs. Rylander.   Allen died on February 19, 1905.   At the time of executing the assignment, he was "of very advanced age," and there was, at or about that time "or soon thereafter, in existence insurance upon [his life] to the amount of twelve or fifteen thousand dollars, and all of said policies were payable to [his estate] and afterwards assigned to some assignee; . . the premiums on said policies amounted to a large sum, . . to eight hundred or a thousand dollars a year, and, . . [he] was not financially able to take out and carry said large insurance policies

and pay the premiums on same; . . this the said Mrs. Hattie Rylander well knew at the time said policy was assigned to her." Mrs. Rylander, at the time of the assignment, intentionally entered into a speculation upon the life of Allen, staking small premiums from time to time against large profits, should Allen die, she having no counterbalancing interest in his life; and therefore the assignment of the policy was a speculation and a wagering contract, and void.

Mrs. Rylander demurred to the petition, generally and specially. One of the grounds of special demurrer was, "that the allegations as to the illegality of the assignment of said policy of insurance to this defendant are too vague and indefinite, except as to the want of insurable interest in the life of the insured on the part of this defendant." The demurrer was overruled, and Mrs. Rylander excepted. Pending the suit the insurance company paid the amount due on the policy into court, and the action was dismissed as to the company.

   *Lane & Maynard,* for plaintiff in error.    *W. A. Dodson,* contra.

FISH, C. J. (After stating the facts.) Where one has procured insurance on his own life in good faith, is an assignment of the policy by him to one who has no insurable interest in his life valid, when the assignment is not made by way of cover for a wager policy? This exact question has never been decided by this court. There is a contrariety of judicial opinion on the subject in other jurisdictions. "An insurance upon life is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another dies within the time limited by the policy. The life may be that of the assured, or of another in whose continuance the assured has an interest." Civil Code, § 2114. "The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his assignee; and upon such direction, given and assented to by the insurer, no other person can defeat the same. But the assignment is good without such assent." Ib. § 2116. A policy of life-insurance, even before the death of the assured, is a chose in action, arising upon contract, and therefore may be assigned. *Steele* v. *Gatlin,* 115 *Ga.* 929. As will be seen, the Civil Code, § 2114, limits the life that may be insured to that of the person taking out the insurance, or to that of another in the continuance of whose life he has an interest; but

§ 2116, in declaring that the assured may direct the money to be paid to his assignee, does not prescribe that such assignee must have an insurable interest in the life of the insured. In *Union Fraternal League* v. *Walton*, 109 *Ga.* 1, Pughsly, a member of the league, procured from it a membership certificate of insurance on his own life, in which Mrs. Walton was named as beneficiary. At his own expense he kept the insurance in force. After his death, Mrs. Walton sued the league to recover the amount of the certificate. On the trial it was admitted that she had no insurable interest in the life of the insured. The sole question for adjudication was, therefore, whether the certificate of insurance, being in favor of one who had no insurable interest in the life of the insured, was for that reason a wagering policy and void. It was held: "While a valid contract of insurance can not lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet, as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote. Such a contract can not be defeated because of the want of insurable interest in the beneficiary, when it appears that the person whose life was insured acted for himself, at his own expense and in good faith, to promote the interest of the beneficiary, in taking out the policy. A contract so entered into is in no sense a wagering or speculative one. Lumpkin, P. J., dissenting." In delivering the opinion for the majority of the court, Mr. Justice Little said: "By section 2116 of the Civil Code it is provided that the assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his *assignee;* and it is further provided that when the insured gives such directions, no other person can defeat the same, and that the assignment is good without such assent [the assent of the insurer]. We are aware that there is seemingly irreconcilable conflict between the adjudicated cases as to whether the assignee of a life policy takes anything under the assignment unless he has an insurable interest in the life insured. But it will be noted that under the provisions of our code no such qualifications are made essential to the validity of the assignment, nor do we think under sound reasoning any can exist. The rule which restricts the execution of a valid contract of insurance on the life of another to one who has an insurable in-

terest in that life is founded alone upon public policy, and it may be stated in general terms that where one has an interest in a life that interest is insurable. Beyond all controversy a man has an insurable interest in his own life, and we fail to see, when having that interest he enters into a contract with an insurer by which, for a stipulated sum which he periodically pays, the insurer becomes liable to pay a given sum of money at the death of the insured, why he who is most interested, whether actuated by ties of relationship, motives of friendship, gratitude, sympathy or love, may not make the object of his consideration the recipient of his own bounty. If it be replied that a temptation is extended to the beneficiary by improper means to hasten the time when he should receive the amount of the policy (and it is for this reason that such contracts will only be upheld when the idea of temptation is rebutted by the natural ties of blood or affinity), we might well ask ourselves why executory devises, bequests, provisions for support and maintenance provided for friends and even strangers are not subject to the same inhibition, as being against public policy. But while, as we have before said, many adjudicated cases, frequently contrary to natural justice, clearly hold that unless the beneficiary or assignee has an insurable interest in the life of the insured the policy or assignment is void, we shall undertake to show by authority that such is not the rule of the law." The learned Justice then cites and comments upon many authorities which abundantly sustain the position taken by the majority of the court. It will be noted that he treats the beneficiary without insurable interest in the life of the insured and an assignee without such interest as in the same category; indeed, he seems to argue that as under the provisions of our code the assured may direct the policy to be paid to an assignee, who has no insurable interest in the life of the insured, it follows that the insured may insure his life for the benefit of one who has no interest in its continuance.

In *Ancient Order of United Workmen* v. *Brown,* 112 *Ga.* 545, a mutual beneficiary association issued a certificate of membership on the life of Harvey, in which Miss White was named as the beneficiary. Subsequently Harvey surrendered this certificate to the order, which cancelled the same, and a new certificate was issued, in which, at his direction, Mrs. Brown, who was neither related to nor in any way dependent upon him, was designated as the beneficiary, her

14

relationship to him being stated as that of "friend." This change of the beneficiary was made by Harvey in consideration of an agreement between him and Mrs. Brown that she would take the certificate in satisfaction of four months board, she agreeing to pay all future assessments made by the association. She received the new certificate under this agreement, and paid all the future assessments made by the association upon Harvey until his death. Afterwards, in an action brought by Mrs. Brown to recover the amount due on the certificate, the order contended that as she had no insurable interest in the life of Harvey, the certificate of insurance in which she was named as beneficiary was a wagering policy, and therefore void. The majority of the court held that this point was covered by the ruling made in *Union Fraternal League* v. *Walton*, 109 *Ga.* 1. In the opinion delivered for the majority of the court by the writer, it was said: "It is true that in that case the assessments were kept up by the assured, while in the case in hand the assessments becoming due after the benefit fund was made payable to Mrs. Brown were to be paid by her, the beneficiary. We are unable to see, however, why that difference should alter the principle underlying the conclusion reached by the majority of the court in *Union Fraternal League* v. *Walton*. The public policy which prevents one person from insuring the life of another in whose life he has no insurable interest is based upon the presumption that a temptation would be held out to the one taking out the policy to hasten, by improper means, the time when he should receive the amount named in the policy. Such temptation would be as strong, we think, in a case where the assured took out a policy upon his own life for the benefit of one having no interest therein, and was to keep up the premiums or assessments, as it would be where the premiums or assessments were to be paid by the beneficiary. Indeed, the temptation to hasten the death of the assured might be stronger where the assessments were to be paid by him than where they were to be paid by the beneficiary; for the reason that the beneficiary could not be certain that the assured would continue to pay the assessments. But be that as it may, the temptation generally would be to hasten the time for the payment of the insurance, rather than to avoid the payment of premiums or assessments." If where one who has, in good faith, procured a policy of insurance upon his own life and kept it in force for a time, and

thereafter has had a new policy issued in lieu thereof, payable to one who has no insurable interest in the life insured, the policy is not void as a wagering policy, although such beneficiary thereafter keeps the policy alive by paying the premiums or assessments falling due thereon, it must necessarily follow, we think, that if one in good faith procures a policy of insurance upon his own life, an assignment of the policy made by him will be valid, if not done by way of cover for a wager policy, though the assignee has no insurable interest in the life insured. For it will be observed that in the *Union Fraternal League* case, supra, the surrender of the old benefit certificate and the issuance of the new one, payable to one who had no insurable interest in the life insured, and who paid the subsequent assessments thereon, was tantamount to an assignment of the certificate to the new beneficiary.

Counsel for defendant in error cites the case of *Exchange Bank of Macon* v. *Loh,* 104 *Ga.* 446. In that case Hudgins applied to the insurance company for a policy on his life for five thousand dollars. The company sent to its local agent two policies, each for that amount, on Hudgins's life, both payable at his death to his legal representatives. Hudgins accepted one and declined to take the other. The agent, knowing that Hudgins was indebted to the Exchange Bank, carried the policy which Hudgins had declined to accept to the cashier of the bank, stated to him the facts, and requested him to take the policy for the bank, as a creditor of Hudgins, and pay the premiums thereon. The cashier consented to do so, provided Hudgins would assign the policy to the bank. This was done by Hudgins, the agent of the insurance company delivering the policy to the bank and receiving from it the premium due thereon. The cashier had no conference or consultation, in any way, with Hudgins about the transaction, and it was distinctly understood between the cashier, representing the bank, and the agent of the insurance company, representing it, that the policy was taken out by the bank for its own protection as a creditor of Hudgins, and that in no event was Hudgins to be liable for the first premium or any future premiums, either to the bank or to the insurance company. No demand was ever made upon Hudgins for any premium, but the bank paid all premiums on the policy, without charging Hudgins for the same. On the trial of an equitable petition brought by Loh, as administrator of Hudgins, against the

bank and other creditors of Hudgins, to marshal the assets of his estate, etc., the above-stated facts appeared; and the cashier testified: "What induced me to take out this  .  .  policy was the fact that the bank was practically carrying Mr. Hudgins's business, and had been for two or three years, probably longer, and his business had been getting worse, and I wanted all the protection that I could get in the carrying of his business, and I took this as additional protection." Upon being asked, "To what extent were you influenced in the taking out of this policy as an investment?" he replied: "I regarded it as a good investment. He was quite an old man, and in the ordinary course of life he would probably not live very long, and I thought even as an investment it would do to take." The bank had collected the amount of the policy from the insurance company, and its contention was, that after crediting a sufficiency of the net proceeds of the policy to pay the indebtedness due it by Hudgins's estate, the balance of such proceeds was its property. This contention was not upheld by the trial court, which decreed that the proceeds of the policy, after first reimbursing the bank for the premiums paid by it, with interest thereon, was the property of the estate of Hudgins, and not the property of the bank, but that the bank had the right to apply a sufficiency of such balance to pay the indebtedness due it by Hudgins. In other words, the effect of the decree was, that the bank held the policy as collateral security for what Hudgins owed it, and not as its own property. Upon a review of that decree, this court held that the evidence in the case warranted a finding that the policy was not a wagering policy, but that it was in good faith taken out by the assured himself and by him assigned to his creditor, the bank, as a collateral security merely, and, therefore, the judgment rendered was not contrary to law. So, it will be seen that the ruling in that case was, that where a debtor in good faith takes out insurance upon his own life, he may assign it to his creditor as collateral security for the debt, which may include the cost of taking out and keeping up the insurance. This was as far as it was necessary to go in order to determine the case which was before the court; and this in no way conflicts with the ruling which we make in the present case. In that case it was not necessary to decide whether one who in good faith takes out a policy of insurance upon his own life can afterwards assign such policy of insurance to one having

no insurable interest in such life; nor was such point decided, though there are expressions, in the opinion delivered by Presiding Justice Lumpkin, to the effect that such an assignment would be void, and in some of the cases cited by him from other jurisdictions it was so held.

Another case cited by counsel for defendant in error is *Quillian* v. *Johnson,* 122 *Ga.* 49. There it appears that Thomas, on April 15, 1902, procured an insurance policy on his own life, payable at his death to his legal representatives or assignees. On February 11, 1903, he assigned it to Quillian, who had no insurable interest in the life of Thomas, the assignment reciting that it was for value received, subject to any indebtedness due on the policy to the insurance company. The insurance company, on April 27, following, recognized the assignment by an indorsement thereon. The policy and assignment were delivered to Johnson, the local agent of the company and a creditor of Thomas. Contemporaneously with the assignment, Quillian executed a written instrument in which it was stated that as there was a quarterly premium of $151.52 due on the policy January 15, 1903, with thirty days grace allowed for its payment, and as Thomas had requested Quillian to pay the same for him in case Thomas did not pay it by February 15, 1903 Thomas "for valuable considerations has assigned said policy to Quillian." This instrument further stipulated, that Quillian should pay the premium on or before February 15, 1903; that Johnson should hold the assignment for ninety days, and Thomas should have the privilege of repaying the premium to Quillian within that period, and in case he did so the assignment should be returned to him, but upon his failure so to do, then the policy should go to Quillian "to do as he deems best with it;" that should Thomas die within the ninety days, Quillian should pay to named minor children of Thomas specified amounts out of the proceeds of the policy, and pay Johnson the amount due him by Thomas on certain promissory notes. There was no consideration for the assignment other than Quillian's promise to pay the past-due quarterly premium, which he afterwards fulfilled, and his agreement to pay, out of the proceeds of the policy, specified amounts to Thomas's children, and to pay therefrom the notes of Thomas held by Johnson. Thomas died within the ninety days, and Quillian paid Johnson the amount of the notes. This court

held: "Irrespective of whether the holder of a policy of insurance on his own life may legally sell and assign the policy to one having no insurable interest in his life, the policy-holder is certainly not at liberty to make the policy the subject-matter of a purely wagering and speculative contract between himself and a person having no interest therein;" and that whether the written agreement executed by Quillian be construed by itself or in connection with the oral evidence submitted at the trial, which left the intention of the parties free from all doubt, such agreement between Thomas and Quillian was a wagering and speculative contract pure and simple, and, for that reason, could not be enforced at the instance of Quillian. In construing the agreement, Mr. Justice Evans, in delivering the opinion of the court, said: "If Thomas did not die within the ninety-day period, he could, but was not bound to, redeem or repurchase the policy by paying Quillian the amount advanced to pay the quarterly premium; if Thomas elected to redeem on these terms and actually did so, Quillian would make nothing but would lose interest on the money advanced by him; if Thomas lived, but declined to redeem, Quillian would lose the amount advanced and interest thereon, while Thomas would forfeit all interest in the policy, if the premiums thereafter falling due were not paid. The 'stake' which Thomas put up was the policy; the 'stake' put up by Quillian was $151.52 in cash." In the opinion it is expressly stated that the decision was rendered without reference to the doctrine on which were based the cases of *Union Fraternal League* v. *Walton,* 109 *Ga.* 1, and *Ancient Order of United Workmen* v. *Brown,* 112 *Ga.* 554.

"The stronger reasons, the decided trend of the decisions of the courts, and the great weight of authority concur to establish the rule that an insurable interest in an assignee of a policy of life-insurance is not essential to the validity of the assignment if the party to whom it was originally issued had such an interest, and the assignment is not made as a cover for the issue of a wager policy." Gordon *v.* Ware Nat. Bank (U. S. C. C. A.), 132 Fed. 444. The courts of Alabama, Kansas, Kentucky, Missouri, North Carolina, Pennsylvania, Texas, and Virginia have not adopted this rule, but have followed the decision rendered in the earlier case of Franklin Life Ins. Co. *v.* Hazzard, 41 Ind. 116, wherein it was declared that such an assignment was as obnoxious to the rule

against wager policies as the issue of a policy to one without insurable interest, and was, therefore, void. See Gordon v. Ware National Bank, supra, where the decisions of the courts of the above-named States are collated. In that case Sanborn, Circuit Judge, said: "The rule adopted by these States greatly detracts from the value of life-insurance policies, and restricts their commercial value; for, if their possible purchasers are limited to those who have insurable interests in the lives they insure, it is obvious that buyers will be few, and their commercial value and the traffic in them must be much less than if all men may become their lawful purchasers. In view of this fact the Supreme Court of the United States and the courts of the great commercial communities of this country—of New York, Ohio, Massachusetts, Illinois, Michigan, New Jersey, California, Minnesota, Connecticut, Louisiana, Rhode Island, Wisconsin, Nebraska, Tennessee, South Carolina, Mississippi, and Maryland—have repudiated the old declaration of the Supreme Court of Indiana, and have adopted the more modern and rational rule that 'any person has a right to procure an insurance on his own life, and to assign it to another, provided it be not done by way of cover for a wager policy.'" In support of this more modern rule, the following cases are cited: Ætna Life Ins. Co. v. France, 94 U. S. 561; New York Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591; Chamberlain v. Butler, 61 Neb. 730, 738; Crosswell v. Connecticut Indemnity Asso., 51 S. C. 103; Bursinger v. Bank of Watertown, 67 Wis. 75; St. John v. Ins. Co., 13 N. Y. 31; Valton v. Ins. Co., 20 N. Y. 32; Olmsted v. Keyes, 85 N. Y. 593; Steinback v. Diepenbrock, 37 N. Y. Supp. 279, 1 App. Div. 417; Eckel v. Renner, 41 Ohio St. 232, 233; Mutual Life Ins. Co. v. Allen, 138 Mass. 24; Dixon v. National Life Ins. Co., 172 Mass. 498; Martin v. Stubbins, 126 Ill. 387; Prudential Ins. Co. v. Liersch, 122 Mich. 436; Trenton Ins. Co. v. Johnson, 24 N. J. Law, 576, 585; Vivar v. Knights of Pythias, 52 N. J. Law, 455; Curtiss v. Ætna Life Ins. Co., 90 Cal. 245; Widaman v. Hubbard (C. C.), 88 Fed. 806; Hogue v. Minnesota Packing Co., 59 Minn. 39; Brown v. Equitable Life Assur. Soc., 75 Minn. 412; Fitzgerald v. Hartford Ins. Co., 56 Conn. 116; Succession of Hearing, 26 La. Ann. 326, 327; Clark v. Allen, 11 R. I. 439, 443; Strike v. Wisconsin Ins. Co., 95 Wis. 583; Clement v. N. Y. Life Ins. Co., 101 Tenn. 22; Murphy v. Red, 64 Miss. 614; Rittler v. Smith

(Md.), 16 Atl. 890, 892, 893; Souder v. Society (Md.), 20 Atl. 137, 138.   For a full discussion of the cases on the subject, see 1 Cooley's Briefs on Law of Ins., 262 et seq.   The doctrine announced in Franklin Life Insurance Co. v. Hazzard, supra, was subsequently repudiated even in Indiana, in the case of Milner v. Bowman, 119 Ind. 448, wherein it was held: "When the person himself in good faith makes the contract, procures the insurance on his own life, and pays the premiums, it is immaterial whether the beneficiary designated by him, or the assignee of the policy, has any insurable interest in the life of the insured or not."   In Clark v. Allen, 11 R. I., 439, Durfee, C. J., said: "A life policy is a chose in action, a species of property, which the holder may have perfectly good and innocent reasons for wishing to dispose of. He should be allowed to do so unless the law clearly forbids it. It is said that such an assignment, if permitted, may be used to circumvent the law.   That is true, if insurance without interest is unlawful; but it does not follow that such an assignment is not to be permitted at all, because if permitted it may be abused. Let the abuse, not the bona fide use, be condemned and defeated. See Shilling, adm'r, v. Accidental Death Ins. Co., 2 H. & N. 42. . .   Again, the assignment is said to be a gambling transaction, a mere bet or wager upon the chances of human life.   But the wager was made when the policy was effected, and has the sanction of the law.   The assignment simply transfers the policy, as any other legal chose in action may be transferred, from the holder to a bona fide purchaser.   It is true there is an element of chance and uncertainty in the transaction; but so there is when a man takes a transfer of an annuity, or buys a life-estate, or an estate in remainder after a life-estate.   There is in all these cases a speculation upon the chances of human life.   But the transaction has never been held to be void on that account.   But finally it is urged that the purchaser or assignee subjects himself to the temptation to shorten the life insured, and that this the policy of the law does not countenance.   The law permits the purchase of an estate in remainder after a life-estate, which exposes the purchaser to a similar temptation."

Of course one can not do indirectly what the law prohibits him from doing directly; and as it is unlawful for a person to effect insurance upon the life of another in the continuance of whose

life he has no interest, an evasion of this rule by the issue of a policy to one who has an insurable interest, and its immediate assignment, pursuant to a preconceived intent, to one without such interest, who undertakes to pay the premiums for his chance of profit upon his investment, is ineffective, and such an assignment is void. Mutual Life Ins. Co. v. Allen, 138 Mass. 24; Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, and cit.; 1 Cooley's Briefs on Insurance, 273-4. But there are no allegations in the petition in the case under consideration going to show an intention on the part of Allen and Mrs. Rylander to circumvent the law against wagering policies, it not appearing from the petition that Allen, at the time he effected this insurance upon his life, intended to assign the policy to Mrs Rylander, or that she even knew of his intention to take out the policy. Nor does it appear from the petition that Mrs. Rylander did not pay Allen a valuable consideration for the assignment The mere fact that Allen, at the time he took out the policy and at the time of the assignment, was of very advanced age is not sufficient to invalidate the assignment. It is true that the amendment to the petition alleged, that at or about the time of the assignment, or soon thereafter, there existed insurance upon Allen's life to the amount of twelve or fifteen thousand dollars, and that he was not financially able to carry insurance to so large an amount, and that the other policies were assigned to some other assignee, and that these facts were known to Mrs. Rylander. But if the object in making these allegations was to show that Mrs. Rylander, at the time of the assignment of this policy to her, knew that Allen had taken out policies of insurance upon his life for the mere purpose of assigning them to persons having no insurable interest in his life, it was not accomplished by the allegations actually made. A mere cursory examination of the allegations of the amendment to the petition will show this. Even if the amendment to the petition could be construed as positively alleging that at the time of the assignment of this policy to Mrs. Rylander there was in existence upon the life of Allen insurance to the amount of twelve or fifteen thousand dollars, which he was not financially able to carry, and that Mrs. Rylander knew this, it would not materially strengthen the case made by the original petition. At the time of this assignment there might have been in existence insurance to such an amount upon Allen's life, all of which, except this policy of five

thousand dollars, he had taken out long years before, when he was a much younger man; for it is not alleged when he procured the insurance other than that which he assigned to Mrs. Rylander. So Mrs. Rylander might have known of the existence of this other insurance, and have also had reason to believe that Allen was not financially able to keep in force all the insurance which he had obtained upon his life, and yet might in perfect good faith have purchased the policy in question, believing that Allen wanted to dispose of it because he then realized that he had made a mistake in attempting to carry this policy of five thousand dollars in addition to the seven or ten thousand dollars of insurance which he previously had. Of course, if the insurance other than that covered by the policy in question was procured by Allen after the assignment of this policy to Mrs. Rylander, she could not have known of its existence at the time of the assignment. She could not then have known of the existence of a fact which subsequently transpired. Again, this amendment to the petition did not even allege that the insurance other than that involved in the present case was assigned to some one who had no insurable interest in Allen's life. So the allegations in reference to this other insurance fail to even indicate that Allen himself had sought, in any instance, to circumvent the law in reference to wager policies.

Our conclusion is that the petition did not set forth a cause of action against Mrs. Rylander, and the court, therefore, erred in overruling the general demurrer.

*Judgment reversed. All the Justices concur*