## RUSSELL et al. v. GRIGSBY.

### (Circuit Court of Appeals, Sixth Circuit. March 22, 1909.)

### No. 1,864.

1. INSURANCE (§ 199*)—NATURE OF POLICY—ASSIGNMENT.

In the absence of restrictions to the contrary, a life insurance policy payable to insured's executors, administrators, or assigns is an assignable chose in action, provided assignment is not forbidden by public policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 468; Dec. Dig. § 199.*]

2. INSURANCE (§ 147*)—POLICY—CONSTRUCTION—WHAT LAW GOVERNS.

Where a life insurance contract was made in Pennsylvania and provided that the place of the contract should be the state of Pennsylvania, the contract of insurance would be construed according to the laws of that state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 293; Dec. Dig. § 147.*

What law governs policies, see notes to Corley v. Travelers' Protective Ass'n, 46 C. C. A. 287; Globe & Rutgers Fire Ins. Co. of New York v. David Moffat Co., 83 C. C. A. 100.]

3. INSURANCE (§ 147*)—CONSTRUCTION—WHAT LAW GOVERNS.

In the absence of a provision in a life insurance contract as to the law of the state by which it is to be construed, its construction is a question of general and not of local law.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 293; Dec. Dig. § 147.*]

4. INSURANCE (§ 200*)—LIFE POLICY—ASSIGNMENT—WHAT LAW GOVERNS.

A provision in a life insurance policy that the place of the contract should be the state of Pennsylvania did not apply to an assignment of the policy made in Tennessee, the validity of the assignment being governed by the law of that state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 469; Dec. Dig. § 200.*]

5. INSURANCE (§ 212*)—LIFE POLICY—ASSIGNMENT—STATUTES.

Shannon's Tenn. Code, § 3516, making certain obligations, including insurance policies, assignable though not negotiable at common law, and giving to the assignee the right to maintain an action in his own name, does not qualify one to take by assignment a policy of life insurance who was disqualified by public policy.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 212.*]

6. COURTS (§ 372*)—RULES OF DECISION—DECISIONS IN STATE COURTS—CONFORMITY ACT.

Rev. St. § 721 (Judiciary Act Sept. 24, 1789, c. 20, § 34, 1 Stat. 92 [U. S. Comp. St. 1901, p. 581]), providing that the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply, is limited to local statutes and usages, and does not apply to questions of general law not based on local statutes or usages nor involving settled local rules of property having a situs within the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

State laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

7. COURTS (§ 372*)—FEDERAL COURTS—QUESTIONS OF GENERAL LAW.

Where the validity of an assignment of a life insurance policy between citizens of Tennessee and made in that state is to be determined by a

---

federal court sitting therein, and such validity does not depend on a local statute or usage but is to be decided on principles of general law, the court must exercise an independent judgment, though it leads it to a different conclusion from that arrived at by the Tennessee courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*]

**8.** INSURANCE (§ 593*)—ASSIGNMENT—INVALIDITY—EFFECT.

Where a life insurance policy was valid when issued, the fact that an assignment thereof to one having no insurable interest was invalid did not affect the liability of the insurer on the policy to persons entitled to take in the face of the assignment.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1452; Dec. Dig. § 593.*]

**9.** INSURANCE (§ 593*)—LIFE INSURANCE—ASSIGNMENT—INSURABLE INTEREST.

A policy insured decedent's life for the benefit of his executors, administrators, and assigns, and provided that any claim against the insurer arising under an assignment of the policy should be subject to proof of interest. Before the third premium fell due, insured, having met with financial misfortune, was unable to meet it. Insured also needed a surgical operation, but was without means to obtain the service, and in this condition he assigned the policy to claimant in consideration of $100 in money and claimant's engagement to pay the premium then past due and future premiums, which he did until insured died from a disease, not traceable to the injury, some two years thereafter. Claimant at the time of the assignment was neither a relative nor creditor of insured. *Held,* that the assignment was void for want of an insurable interest in claimant, and that he was only entitled to receive from the proceeds of the policy the amount actually paid and advances for subsequent premiums.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1482; Dec. Dig. § 593.*]

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

G. T. Hughes, for appellants.

J. A. Pitts, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

LURTON, Circuit Judge. Under a bill of interpleader, the Penn Mutual Life Insurance Company, a corporation of the state of Pennsylvania, paid into the court below $10,000 due from it upon a policy of insurance upon the life of John C. Burchard, and the only question is as to whether the fund shall be paid to an assignee of the policy or to the administrators of the assured.

The facts necessary to be stated are these: Upon the personal application of the assured, John C. Burchard, an ordinary life policy was issued to him January 23, 1903. The assured lived in Tennessee. The contract was actually concluded at the office of the company at Philadelphia, and the contract on its face provided "that the place of contract shall be the city of Philadelphia, state of Pennsylvania." It was payable to the "executors, administrators or assigns" of the assured. But in respect of assignments it was provided "that any claim against the company arising under an assignment of this policy shall be subject to proof of interest." The assured paid two annual pre-

miums. The third fell due January 23, 1905. The assured had in the meantime met with financial misfortune and was unable to meet this premium. He had also incurred a serious injury which necessitated a grave surgical operation, and was without the means to obtain the service he needed. In this critical condition he sold and delivered his policy to the defendant in error, receiving for the same $100 in money and the engagement of Dr. Grigsby that he would pay the premium then past due and all future premiums. The assignment executed was in these words:

"In consideration of the sum of one hundred dollars ($100.00) paid to me, the receipt of which is acknowledged and the further consideration of the payment to the company of the premium upon the life insurance policy hereinafter mentioned, now due and payable, as well as the payment of the premiums hereafter to accrue upon said policy, I, John C. Burchard, insured as John Cook Burchard, do hereby assign, transfer and convey to A. H. Grigsby my life insurance policy in the Penn Mutual Life Insurance Company of Philadelphia, for ten thousand dollars ($10,000.00), No. 230,176, of date January 26, 1903, together with all the legal rights and interests I have in the same and all the benefit, interest and right accruing by virtue of same.

"To have and to hold unto the said A. H. Grigsby absolutely, and I hereby authorize said life insurance company to pay to the said A. H. Grigsby the sum insured at my death upon the conditions mentioned in said policy. Executed in duplicate this the ——— day of February, 1905."

A copy duly acknowledged was sent to the insurer. The assignee paid two annual premiums, when the assured died of a disease not traceable to the injury he had sustained. The insurer, being notified that the amount due under the policy was claimed both by the assignee and the administrators of the assured, filed a bill of interpleader against the contestants, and was discharged upon paying the fund into court. Upon this state of facts the court below adjudged the fund to the assignee.

Dr. Grigsby, the appellee and assignee of the policy, was not related to Mr. Burchard. Neither was he a creditor. He had, therefore, no insurable interest in the life of the assured whatever. If, therefore, this policy had been originally obtained in pursuance of some agreement or understanding that it should be assigned to and carried by him, the transaction would have been a wagering or gambling transaction under all the cases, and invalid as against public policy. But that is not the case. The policy was applied for by the assured without any purpose of assigning it. After paying two annual premiums he was driven to sell it for what he could get. This raises the single sharp issue as to whether one who has no insurable interest in the life of an assured is to be protected in his right as assignee of a policy, originally issued in good faith to the assured, beyond the actual amount of his disbursements on account of the transaction.

In the absence of restrictions imposed by the contract, such a policy is an assignable chose in action, provided the assignment is not one forbidden by settled principles of public policy. The contract of insurance was one thing, and the contract of assignment was another. The insurance contract was made in Pennsylvania, and provides that the place of contract shall be the state of Pennsylvania. This is an obligatory term, and the contract of insurance will be con-

strued according to the law of Pennsylvania. Penn Mutual Ins. Co. v. Mechanics' Bank, 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33. In the absence of such a term in the contract, the construction and interpretation of a policy of insurance is a question of general and not local law. Carpenter v. Providence Insurance Co., 16 Pet. 495, 10 L. Ed. 1044. But the contract of assignment, so far as it is not affected by any term of the policy, was made in Tennessee, and its interpretation and validity must be determined by the law of the place of the execution of the assignment. There is no question of construction, and the validity of the assignment depends upon whether the contract of assignment was contrary to principles of public policy.

What, then, is the law of Tennessee? There is no applicable statute law. Section 3516, Shannon's Code, Tenn., has been referred to as having some bearing. That provision makes assignable certain obligations not negotiable at the common law, and gives to the assignee the right to maintain an action in his own name. Policies of life insurance have been held to be within it. Mutual Insurance Co. v. Hamilton, 5 Sneed (Tenn.) 269; Scobey v. Waters, 10 Lea (Tenn.) 551, 561. The statute plainly does not qualify one to take by assignment a policy of life insurance who is disqualified by considerations of public policy. Franklin Ins. Co. v. Hazzard, 41 Ind. 116, 13 Am. Rep. 313; Brennan v. Franey, 142 Pa. 301, 21 Atl. 803; Insurance Co. v. Lane (C. C.) 151 Fed. 276.

There being no Tennessee statute which affects the question, it is obviously one to be determined by the general law, and the decisions of the Tennessee courts are not obligatory upon a court of the United States. Section 721, Rev. St., being section 34 of the judiciary act of September 24, 1789, c. 20, 1 Stat. 92 (U. S. Comp. St. 1901, p. 581), which provides that "the laws of the several states * * * shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply," has been construed as limited to local statutes and local usages, and as not applying to questions of general law not based on local statutes or usages nor involving settled local rules of property having a situs within the state. Swift v. Tyson, 16 Pet. 19, 10 L. Ed. 865; Carpenter v. Providence Ins. Co., 16 Pet. 495, 10 L. Ed. 1044; Railroad v. National Bank, 102 U. S. 14, 29, 26 L. Ed. 61 et seq.; B. & O. Railroad v. Baugh, 149 U. S. 378, 13 Sup. Ct. 914, 37 L. Ed. 772; Hartford Ins. Co. v. Railroad, 175 U. S. 100, 20 Sup. Ct. 33, 44 L. Ed. 84. Although the assignment here in question was made in Tennessee and between citizens of that state whose rights are to be determined by a court of the United States sitting in that state, its validity does not depend upon a local statute or usage, and must be determined by the court, as it would be if before a court of the state, upon principles of general law. When that is the situation, federal courts are under obligation to exercise an independent judgment, when such judgment must lead them to a different conclusion from the local courts. Carpenter v. Providence Ins. Co., 16 Pet. 495, 10 L. Ed. 1044; Hartford Ins. Co. v. Railroad, 70 Fed. 201, 203, 17 C. C. A. 62, 30 L. R. A. 193; Gordon v. Ware National Bank, 132 Fed. 444, 446, 65 C. C. A. 580, 67 L. R. A. 550; Insurance Co. v. Lane (C. C.) 151 Fed. 276,

affirmed by the Circuit Court of Appeals 157 Fed. 1002, 85 C. C. A. 677.

With respect to the particular question of general law here involved, there cannot be said to be any clearly defined and well-settled rule of decision in the Supreme Court of Tennessee. The question seems never to have been definitely decided until the unreported case of Lewis v. Edwards, decided December 14, 1903, in which a bare majority of the court reversed a majority opinion of the Tennessee Chancery Court of Appeals. Possibly the fact that no opinion was filed, or that the judgment was that of only a majority of the court, should affect its force and effect if we were compelled to follow the decisions of that court. As we are under no such obligation, we feel less reluctance in reaching a different conclusion, because there seems to be no settled line of decisions in that state.

Coming, then, to the validity of an assignment of a policy of life insurance, applied for and carried in good faith by the assured, and transferred as a matter of financial necessity to a person having no insurable interest in the life of the assured, we are compelled to confess that there is a hopeless division between the decisions of the courts which have directly passed upon the question. The view taken by perhaps a decided majority of the state courts is that in such circumstances an assignment should be upheld as serving to give a greater sale value to such instruments by widening the class of possible purchasers, and that public policy is best subserved by upholding the commercial character of such contracts when there has been no connection between the assignee and the inception of the contract of insurance. Among the opinions which uphold this view we may cite Mutual Ins. Co. v. Allen, 138 Mass. 24, 52 Am. Rep. 245, Rylander v. Allen, 125 Ga. 206, 53 S. E. 1032, 6 L. R. A. (N. S.) 128, and Olmsted v. Keyes, 85 N. Y. 593.

Among the cases holding that such assignments to one having no insurable interest in the assured are contrary to public policy, may be cited Downey v. Hoffer, 110 Pa. 109, 20 Atl. 655; Helmetag's Adm'r v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Life Ins. Co. v. Sturges, 18 Kan. 93, 26 Am. Rep. 761; Franklin Ins. Co. v. Hazzard, 41 Ind. 116, 13 Am. Rep. 313. The English decisions throw little light upon the subject. The cases are few, and turn mainly upon the construction of the act of 14 Geo. III, c. 48. That statute declared void any policy in favor of one who "shall have no interest" in the life of the assured. The third section of the act is in these words:

"That in all cases where the insured hath interest in such life or lives, event or events, no greater sum shall be recovered or received from the insurer than the amount or value of the interest of the insured in such life or lives, or other event or events."

In Goodsall v. Boldero, 9 East, 72, decided in 1807, the action was by the payee of a policy taken by certain creditors of the great William Pitt. There was no question but that the necessary interest in the life of the debtor statesman existed when the policy issued, and that when the assured died this interest had not ceased. The debt was in excess of the amount of the policy, and was unpaid. The debtor's estate was likewise insolvent. But before suit, the English

Parliament assumed all of Mr. Pitt's debts and paid them, including the debt of the plaintiffs. Lord Ellenborough, C. J., held that the creditors, having sustained no loss by the death of the assured, his debts having been paid, could maintain no action under the statute. In Ashley v. Ashley, 3 Sim. 147, Vice Chancellor Shadwell, after referring to the statute, contented himself with saying, "Now, there is not a word said here as to the assignment of policies." In Dalby v. India & London Assurance Co. (1854) 15 C. B. 365, the word "hath" in the third section, set out above, was construed as referring to an interest in the life of the assured "at the time of effecting the insurance," and that such interest need not continue until death of the assured, thus overruling Goodsall v. Boldero.

The decisions by the Supreme Court of the United States, curiously enough, are cited by learned counsel for both views of the question, and, what is still more odd, are cited in more than one state court opinion as authority for antagonistic conclusions. This is a misapprehension due to a casual examination, for there can be no doubt that the plain trend of opinion in that court has been in the direction of requiring any claimant to the proceeds of a policy to show an interest in the life of the assured. In order of time, the cases in that court are as follows: Cammack v. Lewis, 15 Wall. 643, 21 L. Ed. 244; Conn. Mutual Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251; Ætna Life Ins. Co. v. France, 94 U. S. 561, 24 L. Ed. 287; Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924; New York Mutual Ins. Co. v. Armstrong, 117 U. S. 597, 6 Sup. Ct. 877, 29 L. Ed. 997; Crotty v. Insurance Co., 144 U. S. 621, 12 Sup. Ct. 749, 36 L. Ed. 566.

Cammack v. Lewis was a suit by the administratrix and widow of the assured against an assignee of a policy upon her husband's life, the assured being the beneficiary, to whom the policy had been assigned, and to whom on the death of the assured the policy had been paid by assent of the widow. The policy was taken out by Lewis at the suggestion of Cammack, a creditor, to the extent of $70, under an agreement that it should be assigned to Cammack, who undertook to pay the premiums and $1,000 to the widow of the assured out of the policy when collected. Although Cammack had collected the policy and had paid over to the widow $1,000 under the agreement and in full satisfaction of any claim she might have, she was permitted to recover from him the entire sum collected by him, less only the actual amount of his debt and the premiums paid by him.

Conn. Mutual Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, was an action upon a policy of joint insurance payable to the survivor, the assured being husband and wife. There was a divorce. The subsequent premiums were paid by the wife, who survived the husband. The action was by the survivor. She was permitted to recover, the court holding that, having an insurable interest when the policy issued, it did not become invalid because her interest in the life of her husband had ceased by divorce. The case is plainly sustainable as joint insurance, and this is distinctly conceded, for the court says:

"The policy in question might, in our opinion, be sustained as a joint insurance, without reference to any other interest, or to the question whether the cessation of an interest avoids a policy good at its inception."

The court did, however, go on and decide that a policy, "valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary effect of the provision of the policy itself." The court, however, added:

"That in cases where the insurance is effected merely by way of indemnity, as where the creditor insures the life of a debtor, for the purpose of securing his debt, the amount of his insurable interest is the amount of his debt."

Upon this general principle, the court in that case laid down the proposition that "an interest of some kind in the insured life must exist," and that:

"It is generally agreed that a mere wager policy—that is, policies in which the insured party has no interest whatever in the matter insured, but only an interest in its loss or destruction—is void as against public policy."

In Ætna Life Ins. Co. v. France, the court held that a policy taken out by a brother in favor of a sister was valid, the relation involving an insurable interest, although the beneficiary was to pay the premiums.

The case of New York Mutual Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997, has no bearing. The policy under both the so-called majority and minority rules was valid, as it was taken out in favor of one who had no sort of insurable interest in the life of the assured. The case went off upon the ground that the beneficiary had been convicted and executed for the murder of the assured, committed to mature the policy, the other point not being made. The facts of that case afford a strong commentary upon the impolicy of relaxing the rule of public policy which forbids any contract whereby one obtains an interest in the destruction of the life of another.

The principal case is that of Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924. That was a suit by the administrator of one Crosser against the assignees of a policy upon the life of Crosser which had been assigned to them. The plaintiff was held to be entitled to recover, subject to the deduction of the actual sum paid by the assignees to keep up the policy and the amount paid over to the widow of the assured under the contract of assignment. The statement of the case shows that Crosser applied for the policy on February 27, 1872. On the same date he entered into an agreement with the defendants that the policy should be assigned to them in consideration of all dues thereon and one-tenth of the policy when collected to the wife of the assured. It also appears that the policy bore date of February 27, 1872, and that on the next day, February 28, 1872, it was assigned according to the agreement of February 27th. Notwithstanding these facts, the court treated the case as that of a policy valid when issued and subsequently assigned upon the consideration mentioned. Upon this point the court, speaking by Mr. Justice Field, said:

"The policy executed on the life of the deceased was a valid contract, and as such was assignable by the assured to the association as security for any sums lent to him, or advanced for the premiums and assessments upon it. But it was not assignable to the association for any other purpose. The association had no insurable interest in the life of the deceased, and could not have taken out a policy in its own name. Such a policy would constitute

what is termed a 'wager policy,' or a mere speculative contract upon the life of the assured, with a direct interest in its early termination."

. Again, the court said:

"The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name. Nor is its character changed because it is for a portion merely of the insurance money. To the extent in which the assignee stipulates for the proceeds of the policy beyond the sums advanced by him, he stands in the position of one holding a ·wager policy. The law might be readily evaded if the policy, or an interest in it, could, in consideration of paying the premiums and assessments upon it, and the promise to pay upon the death of the assured a portion of its proceeds to his representatives, be transferred so as to entitle the assignee to retain the whole insurance money."

The court refers to and states the facts in Franklin Life Ins. Co. v. Hazzard, 41 Ind. 116, 13 Am. Rep. 313, where the assured found himself unable to pay the second premium, and therefore sold it to avoid a total loss for forfeiture to one having no insurable interest, and assigned it with the consent of the insurers, the assignees paying the unpaid premiums, and quote with approval the judgment of the Indiana court that the assignment was void because—

"all the objections against the issuing of a policy to one upon the life of another, in whose life he has no insurable interest, exist against holding such a policy by mere purchase and assignment. That in either case the holder of such a policy is interested in the death rather than the life of the party assured."

Justice Field also refers to the decisions of the New York Court of Appeals as opposed to the Indiana case, saying:

"They hold that a valid policy of insurance effected by a person upon his own life is assignable like an ordinary chose in action, and that the assignee is entitled, upon the death of the assured, to the full sum payable, without regard to the consideration given by him for the assignment, or to his possession of any insurable interest in the life of the assured. St. John v. American Mutual Life Insurance Company, 13 N. Y. 31, 64 Am. Dec. 529; Valton v. National Loan Fund Life Assurance Company, 20 N. Y. 32. In the opinion in the first case the court cite Ashley v. Ashley (3 Sim. 149) in support of its conclusions; and it must be admitted that they are sustained by many other adjudications. But if there be any sound reason for holding a policy invalid when taken out by a party who had no interest in the life of the assured, it is difficult to see why that reason is not as cogent and operative against a party taking an assignment of a policy upon the life of a person in which he has no interest. The same ground which invalidates the one should invalidate the other—so far, at least, as to restrict the right of the assignee to the sums actually advanced by him. In the conflict of decisions upon this subject we are free to follow those which seem more fully in accord with the general policy of the law against speculative contracts upon human life.

"In this conclusion we are supported by the decision in Cammack v. Lewis, 15 Wall. 643, 21 L. Ed. 244. There a policy of life insurance for $3,000, procured by a debtor at the suggestion of a creditor to whom he owed $70, was assigned to the latter, to secure the debt, upon his promise to pay the premiums, and, in case of the death of the assured, one-third of the proceeds to his widow. On the death of the assured, the assignee collected the money from the insurance company, and paid the widow $950 as her portion, after deducting certain payments made. The widow, as administratrix of the deceased's estate, subsequently sued for the balance of the money collected, and recovered judgment. The case being brought to this court, it was held that the transaction, so far as the creditor was concerned, for the excess beyond the debt owing to him, was a wagering policy, and that the creditor, in equity

and good conscience, should hold it only as security for what the debtor owed him when it was assigned, and for such advances as he might have afterwards made on account of it; and that the assignment was valid only to that extent. This decision is in harmony with the views expressed in this opinion."

It is impossible, with due respect for that tribunal, to treat this opinion as mere dictum. To do so would be simply to say that the court did not decide the case that was before them, but another and nonexistent case.

In Crotty v. Union Mutual Ins. Co., 144 U. S. 621, 12 Sup. Ct. 749, 36 L. Ed. 566, the policy was payable to O'Brien on January 15, 1841, "or if said O'Brien shall die before that time to pay said sums * * * to Michael Crotty, his creditor, if living, if not then to said O'Brien's executors, administrators or assigns." There was evidence that O'Brien was largely indebted to Crotty at the inception of the policy. O'Brien died in 1883, and Crotty made proof of death and sued, averring that "he had otherwise performed all of the conditions of the contract." The answer denied that the assured was ever indebted to Crotty, or that he had performed the conditions except by furnishing proof of death. On the trial there was no other evidence of the interest of the plaintiff in the policy than that afforded by the policy itself, and an averment in the proofs of death that he claimed "as creditor of the deceased and beneficiary named in the policy." The court upon this state of the case instructed a verdict for the insurer, and this judgment was affirmed. The question of public policy in respect of the necessity of an insurable interest to sustain a policy of life insurance was referred to in these words by Justice Brewer, who announced the opinion of the court:

"It is the settled law of this court that a claimant under a life insurance policy must have an insurable interest in the life of the insured. Wagering contracts in insurance have been repeatedly denounced. Cammack v. Lewis, 15 Wall. 643. 21 L. Ed. 244, in which a policy of $3,000, taken out to secure a debt of $70, was declared 'a sheer wagering policy.' Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U. S. 457, 461, 24 L. Ed. 251, in which it was said: 'In cases where the insurance is effected merely by way of indemnity, as where a creditor insures the life of his debtor, for the purpose of securing his debt, the amount of insurable interest is the amount of the debt.' Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924."

As to the insurable interest of a creditor in the life of his debtor, the court said:

"If a policy of insurance be taken out by a debtor on his own life, naming a creditor as beneficiary, or with a subsequent assignment to a creditor, the general doctrine is that on payment of the debt the creditor loses all interest therein, and the policy becomes one for the benefit of the insured, and collectible by his executors or administrators. In 2 May on Insurance (3d Ed.) § 459a, the author says: 'A creditor's claim upon the proceeds of insurance intended to secure the debt should go no further than indemnity, and all beyond the debt, premiums, and expenses should go to the debtor and his representatives, or remain with the company, according as the insurance is upon life or on property.'"

Referring to the terms of this policy and the facts of the particular case, the learned Justice said:

"Still, again, not only does justice between the parties, but also that public policy which denounces wagering contracts, require that the proof of indebtedness should be distinct and satisfactory. It would tend to a successful

consummation of wagering contracts in insurance if the mere recital in the policy was held sufficient to sustain a recovery in favor of the alleged creditor, no matter how long after the date of the policy the death of the insured happened. Admissions, whether direct or incidental, should never be carried beyond their actual extent or the reasonable inferences therefrom, and should not be invoked to work injustice to parties litigant or thwart the demands of sound public policy."

This review of the decisions and opinions of the Supreme Court leads us to the conclusion that an insurable interest is absolutely essential to the support of a policy of insurance upon the life of a third person. Without such an interest the beneficiary has no interest in the continuance of the life of the assured, but rather an interest in its early termination. The field of doubt is as to what is an insurable interest. That one has such an interest in his own life is clear. That he has also such an interest in the life of a close relative by blood or marriage, such as parent and child, husband and wife, there is no dispute. When we pass beyond those relations where there is both a legal and a moral responsibility for support and maintenance, we approach the debatable line. It may be safely said that when a recognized legal dependency does not exist, nor the relation of creditor and debtor, an insurable interest must involve some reasonable expectation of pecuniary benefit or advantage from the continuance of the life of the assured. In Kentucky Life Ins. Co. v. Hamilton, 63 Fed. 93, 11 C. C. A. 42, we had occasion to refer to the fact that one may have an insurable interest by reason of expectations or advantages dependent upon the continuance of the life of the assured independent of those blood or marital relations usually deemed essential. In Warnock v. Davis, 104 U. S. 775, 779, 26 L. Ed. 924, the court upon this subject say:

"It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of the parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the assured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

The courts are not agreed as to the extent of the insurable interest of a creditor or of one standing in an equivalent business relation, such as that of partner, joint adventurer, master, or servant.

The cases of Cammack v. Lewis, Warnock v. Davis, and Crotty v. Union Mutual Insurance Co. strongly tend to show that the Supreme Court of the United States regard the insurable interest of

one in the relation of creditor as measured by the extent of the debt or business obligation. When the debt is paid, or the business relation terminated, the interest ceases, and the claim of such a beneficiary is cut off, both as to the insurer and the assured, or those representing him. There is, moreover, a marked difference between the consequences resulting from a policy taken out by one having no insurable interest and the subsequent assignment of a policy issued to one upon his own life and afterwards assigned to one having no interest in the continuance of the life assured. In the first case the contract of insurance is invalid, in the other it is valid and the assignment invalid. In the first case the insurer has never become liable upon the contract; in the other the liability of the insurer to somebody is unaffected by the assignment, in the absence of some term in the insurance contract avoiding it if assigned. The British act of 14 Geo. III, c. 48, deals alone with the validity of the contract of insurance itself. In Warnock v. Davis, cited above, the contract of insurance was not affected because it had been assigned, although the agreement for such assignment antedated the policy. The same is to be said of the contracts in every one of the cases decided by the Supreme Court of the United States. Undoubtedly the contract of insurance in the case at bar was valid. The only question is as to the legal effect of its subsequent assignment. The invalidity of that need not in any way affect the liability of the insurer to the representatives of the assured. Hence it is that the payment by the insurer of the amount of the policy into court has no consequence upon the legal or equitable rights of the rival claimants to the proceeds. The company was liable in any event to somebody, unless some term of the contract made the claim uncollectible at all in case of an assignment. That is not the case here, for the clause making the claim of an assignee subject to proof of interest would only limit the recovery of the assignee to a sum measured by his interest, and leave the company liable to the representatives of the assured for the rest. What, after all, is the moral or legal distinction between an assignment by an assured to one having no interest in his life, made with or without some ante-policy agreement for such assignment? There is undoubtedly a sharp conflict between the decided cases, as we have already noticed. What is the attitude of the Supreme Court upon the question of public policy? Upon this question we must hold that the Supreme Court of the United States recognizes no such distinction. To quote from Warnock v. Davis:

"The assignment of a policy to a party having no insurable interest is as objectionable as the taking out of a policy in his name. * * * If there be any sound reason for holding a policy invalid when taken out by a party who has no interest in the life of the assured, it is difficult to see why that reason is not as cogent and operative against a party taking an assignment of a policy upon the life of a person in which he has no interest. The same grounds which invalidate the one should invalidate the other—so far, at least, as to restrict the rights of the assignee to the sums actually advanced by him. In the conflict of decisions on this subject we are free to follow those which seem more fully in accord with the general policy of the law against speculative contracts upon human life."

Coming to the case for decision, Grigsby had confessedly no insurable interest in the life of Burchard. Under all the cases, if he had been named as beneficiary in the policy under an agreement to pay the premiums, or had an agreement for its assignment when issued, the assignee to pay the premiums, the policy in the one case and the assignment in the other would be illegal and unenforceable. The reason for this result, and the only reason, would be found in the fact that such a beneficiary or assignee would have no interest in the continuance of Burchard's life, but an interest in his speedy death. This speculative interest in human life is obviously contrary to sound public policy. The case we have differs from the one just stated only in the fact that Grigsby was not the appointee in the policy, and did not become an assignee by an arrangement antedating the policy. Burchard found himself unable to pay the third premium, and in need of $100 to obtain a surgical operation of a serious character. Grigsby agreed to give him the $100 needed in this extremity, pay the past-due premium and all other premiums which should thereafter fall due, and take an assignment of the policy. Can one imagine a more purely speculative transaction in which human life was the stake? Burchard might not survive the very operation which he was immediately to undergo. If this should prove the case, for one premium and $100 he would at once realize $10,000. When each recurring premium came due, a like problem was presented to the assignee. "If I pay this, he may die before I have to pay again," would be his natural reflection. He took the chance twice, and before he was required to take another Burchard died. Plainly the transaction was a gambling or wagering bargain, and Grigsby had an interest against, and not an interest in, the continuance of Burchard's life. The evil inseparable from such a bargain is undoubtedly mitigated when the whole of the premiums has been paid once for all, or when the assured is to keep the policy alive. The cost of carrying the policy would not rest upon the assignee, and to that extent his interest in the early termination of the life of the assured would be lessened. Among the authorities which regard this circumstance as in a large degree affecting the validity of such contracts are: May on Insurance, § 112; Foster v. Insurance Co. (C. C.) 125 Fed. 536; Gordon v. Ware Nat. Bank, 132 Fed. 444, 447, 65 C. C. A. 580, 67 L. R. A. 550; Heinlein v. Imperial Life Ins. Co., 101 Mich. 250, 254, 59 N. W. 615, 25 L. R. A. 627, 45 Am. St. Rep. 409; Scott v. Dickson, 108 Pa. 6, 56 Am. Rep. 192; and Campbell v. Insurance Co., 98 Mass. 381. Where, as in this case, the assignee undertook himself to pay the recurring premiums, we are unable to see why the contract of assignment is not as much a gambling contract as if the policy had been issued under an agreement that it should be assigned. The argument against such a conclusion is bottomed upon the commercial idea that considerations of public policy which restrain the assignability of such contracts are not enough in this commercial age to justify the disadvantages to follow from the full right of an assured to do as he will with a contract in which he is the payee. Nowhere is this view of the subject more clearly stated than by Judge Sanborn, in speaking for the Circuit Court of Appeals

for the Eighth Circuit, in Gordon v. Ware Nat. Bank, 132 Fed. 444, 449, 65 C. C. A. 580, 584, 67 L. R. A. 550, where he says:

"This is a great commercial nation. The policy of the nation, the business habits and acts of its citizens, and the tendency of the decisions of its courts are to depart more and more from the old rule that choses in action are not assignable, to make them more and more the subjects of traffic and of commerce, and to sustain their transfers in the ordinary course of business."

The fields of finance and commerce are sufficiently broad without extension in the direction of the negotiability of contracts which have their origin in the wholesome desire to provide for the contingencies of life, the hazards of business, and the support of those survivors dependent upon the assured. Their use as collateral, to secure an actual advance made at the time and the payment of premiums necessary to carry the contract, is recognized by the courts which regard sound public policy as opposed to mere speculative bargains based upon the chances of the continuance of human life.

We have not overlooked the fact that the policy on its face provides that "any claim against the company arising under an assignment of the policy should be subject to proof of interest." Thus the company might escape payment—not of the policy, for that was undoubtedly valid when issued—to an assignee who could not show an interest. The contention is that this clause is inserted solely for the benefit of the insurer, and that it has no effect as between the assured and his assignee. It is thus said that the insurer, having paid the money into court, has thereby waived this clause. In support of this, counsel for appellee cite Mechanics' Nat. Bank v. Comins, 72 N. H. 12, 55 Atl. 191, 101 Am. St. Rep. 650, Spencer v. Meyers, 150 N. Y. 269, 44 N. E. 942, 34 L. R. A. 175, 55 Am. St. Rep. 675, as well as certain other cases not much in point. We are not disposed to assent to the proposition that a clause of this character is inserted wholly for the benefit of the insurer. It is there in recognition of public policy in respect to the necessity of an insurable interest. When Burchard and Grigsby made the agreement of assignment, they must be taken to have had knowledge of this limitation. The assured as well as the general public were concerned. A different principle might apply if the limitation were one plainly inserted for the benefit of the insurer alone. This distinction is recognized by May on Insurance, § 110, and in Stevens v. Warren, 101 Mass. 564, 566. In that case the policy forbid any assignment without the consent of the insurer. The policy was assigned to one who had no interest in the life of the assured, but the proceeds were paid by the company without objection to the administrator of the assured. The bill was one of interpleader to determine the rights of the administrator of the assured and the assignee. After saying that the assignment could only take effect, the company not having assented, "as a designation by mutual agreement" of the assured and the assignee, the court said:

"The purpose of the clause in the policy, forbidding assignments without the assent of the company, is undoubtedly to guard against the increased risks of speculating insurance. The insurers are entitled to the full benefit of such a provision, as a matter of contract; and, as the policy of the law accords with its purpose, the court will not regard with favor any rights sought to be acquired in contravention of the provision.

"The administrator will therefore hold the proceeds of the policy as assets of the estate of his intestate, discharged of any claim thereto under the assignment of the policy to Dewey K. Warren."

But if there is no question of public policy involved in respect of the assignability of such contracts, the clause, in the circumstances of this case, is of little consequence. Certainly the waiver of the clause does not affect the question of the validity or invalidity of the assignment as between the assured and the assignee. The conclusion of the whole matter is that the assignment is valid to the extent of the money actually paid for it as well as for all advances of premiums subsequently made. Beyond this it is a gambling contract and not enforceable.

Decree will be reversed, with directions to enter a decree reimbursing Dr. Grigsby as indicated, and for the payment of the remainder of the fund to the administrators of the assured.