## TURNER *v.* DAVIDSON *et al.*

No. 11345. NOVEMBER 14, 1936. REHEARING DENIED DECEMBER 12, 1936.

*Duke Davis,* for plaintiff in error.

*W. Howell Morrow, Wyatt & Morgan,* and *Bryan, Middlebrooks & Carter,* contra.

BECK, Presiding Justice. A petition was brought by Marvin P. Turner against New York Life Insurance Company and J. L. Davidson, to enjoin further payments by the insurance company of monthly benefits to Davidson under the terms of a life and disability insurance policy issued on the life of petitioner, and to enjoin Davidson from receiving further payments from the insurance company, the petitioner claiming that he is entitled to collect them himself. About one year after the issuance of the policy the insured was stricken blind, and since that time monthly benefits of $10 have been paid to Davidson, who claims to be the assignee of the policy; these payments up to the time of bringing the suit having aggregated $740. The petitioner first made application for a policy in the amount of $2,500, after persistent solicitation by the agent of the insurer, and when the policy arrived he declined to accept it, stating that he could not pay the

premium. The agent informed him that his rejection of the policy would render him liable to pay the medical examination fee of $5; whereupon Davidson, the insured's employer, with the full consent of the insured and the insurance agent, agreed to take the policy on the life of Turner and pay the premium, provided the policy be rewritten for $1000 instead of for $2500, and provided further that he be made the beneficiary. The foregoing appears from the pleadings and the evidence. But, according to the petition and the testimony of the petitioner, Davidson advanced the amount of the premiums, and was to be made the beneficiary merely for the purpose of securing him for the amounts advanced for premiums until the petitioner was in a position to reimburse him; and when the policy arrived it was delivered to Davidson, and the insured never saw it, and he did not execute any assignment of the policy to Davidson. According to the answer and the testimony of Davidson, supported by the testimony of the insurance agent, there was no such understanding and agreement; but there was the express agreement, made by them all, that Davidson was to pay the premiums, and no one but himself was to have any interest whatsoever in the policy. And there was testimony to the effect that when the policy was rewritten for $1000, the petitioner executed an absolute assignment of the policy to Davidson, and the policy was turned over to him. This assignment was introduced in evidence by the defendant.

The petitioner contended that at the time the policy was applied for and issued he owed Davidson nothing. Davidson testified, on cross-examination, that the insured did owe $124.80, saying: "That refreshed my memory. That represents small shortages of fifty cents or twenty-five cents a day, that had accumulated from time to time. That was the balance back prior to 1924. It was on the books. When paying him off, I have not deducted anything from him since 1924. I just didn't, because I just didn't do it." But he further testified: "This policy, at least, had no reference to any indebtedness. It was not taken out for the purpose of securing any indebtedness. The insurance was mine; it was absolutely assigned to me. I was to pay the premiums." There is no conflict in the evidence that since the insured was stricken blind he has become indebted to Davidson to the extent of about $250 for doctors' bills and the payment of hotel and

traveling expenses incurred in an effort to have his sight restored. The monthly benefit payments were made on the application of the insured. At least, such an application was introduced in evidence by the defendant. The insurance company's answer is not in the record, but it is asserted in the brief of counsel that the insurance company's attitude, both in its pleadings and conduct on the trial of the case, is merely that of a stakeholder. The petitioner seeks no money judgment against the insurance company, but prays for judgment against Davidson for the difference between his total indebtedness to Davidson and the $740 collected by him in monthly benefits from the insurance company. The jury returned a verdict in favor of the defendant. The petitioner made a motion for a new trial, which was overruled, and he excepted.

Under the evidence in this case, a finding and judgment enjoining further payments of monthly benefits to Davidson was demanded. This is true notwithstanding two or more theories of the case are presented by the evidence. First, the testimony of the plaintiff makes a case of his allowing the insurance company to issue a policy on his life when he was unable to pay the premium, and agreeing to make Davidson the beneficiary under the policy until such time as he became able to reimburse him for the premiums paid by Davidson; and that he never did execute any assignment of the policy to Davidson. If that evidence be accepted as true, then further payments to Davidson of the monthly benefits should have been enjoined, since the evidence is undisputed that these benefits paid to him have already more than repaid him for all premiums he had to pay and for all indebtedness of the insured to him of every kind. Second, Davidson claims a right to these monthly benefits under the policy because of the express understanding when the policy was applied for that he was to pay the premiums and the insurance was to be his absolutely. No one else was to have any interest in it. But he fails to show that he had any insurable interest in the life of the insured. While it is true that it has been held that the question of lack of insurable interest can be raised only by the insurer (*Clements* v. *Terrell*, 167 *Ga.* 237, 145 S. E. 78, 60 A. L. R. 969), this principle, we think, is applicable only where it is sought to invalidate the policy on that ground. The fact of a lack of insur-

able interest may be considered as throwing light upon the nature of the transaction between the insured and the beneficiary or assignee,—as to whether or not it invaded the rule as to public policy, so as to determine their respective equities. It makes no difference that the insurer has for several years been paying the benefits to Davidson, thus apparently waiving any defense it may have on the ground of lack of insurable interest of the beneficiary or assignee in the life of the insured. Such a waiver does not exculpate Davidson, whose testimony and that of his witnesses confirm his intention to make a wagering contract. Under the testimony of the defendant and the insurance agent the insured was but incidentally a party to a transaction which in its inception was contrary to public policy. It is true that in the Code, § 37-112, it is provided that "When both parties are at fault, and equally so, equity will not interfere, but will leave them where it finds them;" but it is also provided in that same section that "The rule is otherwise if the fault of one overbalances, decidedly, that of the other." In this case Davidson and the insurance agent took advantage of Turner's embarrassment and colluded to have the insurance policy issued in favor of Davidson. And if the arrangement to have the policy issued on the life of the insured, upon his application, and then assigned by him to the real beneficiary, Davidson, was a cover for a speculating risk, contravening the general policy of the law, it would not be sustained. Stevens v. Stevens, 101 Mass. 564.

Our attention has not been called in the briefs of counsel to any decision by this court which covers the precise question presented by this case, but the question has been decided by other courts. In Tate v. Commercial Building Association, 97 Va. 74 (33 S. E. 382, 45 L. R. A. 243, 75 Am. St. R. 770), the Supreme Court of Virginia held: "It is contrary to public interest and against public policy to allow any one to retain the proceeds of a policy of insurance, though voluntarily paid by the insurance company, where the insurance was effected for his benefit upon the life of another in which he had no insurable interest, whether the policy was issued upon the life of the insured directly for such beneficiary, or for the benefit of the insured and then assigned by him to the beneficiary, as this would encourage speculation upon the chances of human life, with a direct interest in its early termi-

nation, contrary to public interest, and in contravention of the policy of the law. . . An assignee of a policy having no insurable interest in the life of the insured can only retain so much of the proceeds, where the insurance was lawfully effected, as is necessary to reimburse him for premiums paid, expenses incurred, and interest thereon." In Bendet v. Ellis, 120 Tenn. 277 (111 S. W. 795, 18 L. R. A. (N. S.) 114, 127 Am. St. R. 1000), the Supreme Court of Tennessee said: "The question . . is, will this court sustain the title of an assignee, where the assignment of the policy follows upon the negotiations already detailed, and where the assignee of his own means, in fulfilment of a promise contemporaneous with its issuance, keeps it alive in his own interest, and simply as a matter of pecuniary profit? We have no hesitation as to the proper answer to this question. Such a transaction is purely speculative on the part of the assignee, entered upon by him as a wagering interest, from which the largest profit is to be derived from the termination of the insured's life, and the heaviest loss to accrue from its long continuance. A transaction of this character is obnoxious to the law, as violative of a sound public policy, and should not be sustained. . . The conclusion reached by us, however, does not invalidate the insurance itself. . . The denial of all right in the beneficiary to retain in such case more than is necessary to reimburse him for premiums paid and expenses incurred dissipates all hope of profit, and removes the temptation to speculate in insurance upon human life." In Beach on Insurance, § 852, it is said: "It has been held by the Supreme Court of the United States [Warnock v. Davis, 104 U. S. 775] that a person who has procured a policy of insurance on his life can not assign it to parties who have no insurable interest in his life. In the opinion Justice Field said: 'The assignment of a policy to a party not having an insurable interest is as objectionable as the taking of a policy in his name.'" We have not overlooked the ruling of this court in Rylander v. Allen, 125 Ga. 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355), where it was held: "One has the right to procure insurance on his life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy." In that case the procurement of the insurance was the voluntary act of the person

whose life was insured, and the insurance was procured by him in good faith for the benefit of another; whereas in the present case those primarily concerned in the issuance of the policy were the insurance agent and Davidson, who was to be the sole beneficiary. The evidence shows that Davidson had no insurable interest in the life of the insured. It is true Turner was his employee, but Davidson showed no contract of employment with him that he desired to protect by this insurance. And as for the small indebtedness of $124, this seems to have been an afterthought which occurred to him only on cross-examination. Besides, his testimony seems to indicate that this debt had been forgiven; and he expressly states it was not considered in connection with the policy.

Much stress is laid by the defendant upon the fact that it was an absolute assignment of all rights and benefits under the policy, and not an assignment to him as his interest might appear. While the assignment reads, "For value received, I hereby assign, transfer," etc., the evidence shows there was no consideration for this assignment, unless the testimony of the insurance agent that the insured assigned the policy to one who would pay the premium so as to escape the payment of the $5 medical fee, constitutes a valuable consideration. To so hold would establish a precedent for the invasion of the rule as to wagering contracts.

The foregoing considerations bring us to the conclusion that the evidence demanded a finding and judgment enjoining further payments to Davidson. The case is remanded for a new trial for the purpose of determining the amount of the judgment, if any, that should be rendered in favor of the petitioner. In view of this holding it is not necessary to pass upon the special grounds of the motion for a new trial assigning error upon the failure of the court to give to the jury certain requested charges.

*Judgment reversed. All the Justices concur.*

On motion for rehearing, BELL, J., withdraws his concurrence, and dissents from the decision.