## 26135. METROPOLITAN LIFE INSURANCE CO.
### v. BENTON.

DECIDED JULY 15, 1937. REHEARING DENIED JULY 28, 1937.

*Jones, Russell & Sparks, Johnston & Jones,* for plaintiff in error.

*Smith & Smith,* contra.

PER CURIAM. Lurner O. Benton brought suit against the Metropolitan Life Insurance Company, alleging, in part, that on April 10, 1899, the American Union Life Insurance Company (hereinafter called the Union Company) executed and delivered to Eugene Benton a $2000, twenty-pay life-insurance policy in which the plaintiff was named as beneficiary; that the policy (which is attached to the petition as an exhibit) provides that when three or more yearly premiums have been paid the owner will be entitled to non-participating, paid-up insurance for such proportion of the amount of the policy as the premiums paid bear to the number required; that the assured paid premiums for six full years, and was entitled to $600 paid-up insurance; that on February 18, 1901, the business and assets of the Union Company were taken over by the Security Trust & Life Insurance Company (hereinafter called the Security Company), and the policies of the Union Company were assumed by the Security Company; that the Security Company entered on the policy an endorsement acknowledging its assumption of liability under the policy; that

the Security Company accepted and receipted for three of the six yearly premiums paid by the assured; that on September 17, 1906, the business and assets of the Security Company were taken over by the Pittsburgh Life and Trust Company (hereinafter called the Pittsburgh Company), and the Pittsburgh Company assumed all liabilities on the policies of the Security Company; that the policy in question was an outstanding policy of the Security Company, and, under this contract between the companies, it was assumed by the Pittsburgh Company; that on May 7, 1917, the Pittsburgh Company was taken over by a receiver; that on August 3, 1917, the receiver of the Pittsburgh Company made a contract with the Metropolitan Life Insurance Company whereby that company (hereinafter called the Metropolitan Company) agreed to assume the insurance policies of the Pittsburgh Company, including the policies of all companies which the Pittsburgh Company had reinsured or assumed, subject to a policy lien of 33-1/3 per cent. of the legal reserve on the policies; that the Metropolitan Company assumed liability on all policies that were in force on May 7, 1917, and by the terms of the policy sued on it was in force as a paid-up policy for $600 on said date; that the insured had no notice of the receivership or of the contract of assumption between the Pittsburgh Company, through its receiver, and the Metropolitan Company; that the insured died on September 4, 1930, and the Metropolitan Company denied all liability under the policy; that the Union Company, the Security Company, and the Pittsburgh Company have all been liquidated and dissolved; and that the receiver of the Pittsburgh Company has been discharged and dismissed, and none of them can be made a party to this suit. The plaintiff prayed for judgment in the amount of the paid-up insurance, $453.22, less the lien above mentioned.

In its answer the Metropolitan Company admitted that the policy contained a provision entitling the owner to a non-participating, paid-up policy after three or more yearly premiums had been paid, that the Security Company assumed liability on outstanding policies of the Union Company, that the Pittsburgh Company assumed liability on outstanding policies of the Security Company, and that the Metropolitan Company under its contract with the receiver of the Pittsburgh Company assumed liability on

outstanding policies of the Pittsburgh Company that were in force on May 7, 1917; but the defendant averred that the policy sued on was not an outstanding policy in force on May 7, 1917, and therefore liability thereon was not assumed by the Metropolitan Company; that the policy provided that the insured would be entitled to a paid-up policy if he complied with a specified New York statute; that the New York statute provided that the insured, on demand made, with surrender of the policy within six months after lapse, might use the reserve in the policy as a single premium to continue the insurance in force for its full amount so long as the reserve would pay the premium, or could use the reserve to purchase paid-up insurance for a proportionate amount; that the insured never made the demand or surrendered his policy, and therefore "the policy sued on lapsed for the nonpayment of the annual premium due April 10, 1905;" that the policy was not in force when the Pittsburgh Company assumed the liabilities of the Security Company in September, 1906, and liability thereon was not assumed by the Pittsburgh Company; that the policy was not carried by the Pittsburgh Company as a liability on its books; that the Metropolitan Company assumed the liabilities of the Pittsburgh Company "subject to an agreement on the part of each holder and owner so consenting that the Metropolitan Company may establish and place against his or her policy a lien equal to 33-1/3 per centum of the legal reserve thereon as it had been established and carried on the books of the Pittsburgh Company;" that the insured never consented to this, and therefore the condition on which said policy was to be assumed was not complied with. The defendant denied liability on the policy sued on.

An agreed statement of facts shows that the application for the policy sued on was solicited, prepared, and executed in Monticello, Georgia, that the policy was executed in New York, and was delivered to the insured in Monticello; that the premiums were paid for six full years and up to April 10, 1905; *that the Security Company assumed liability on the policy,* issued an endorsement to that effect, and accepted three of the six yearly premiums; that the Pittsburgh Company and the Security Company executed the contract as alleged in the petition, whereby the *Pittsburgh Company assumed the liabilities of the Security Com-*

*pany;* that the policy was never carried on the books of the Pittsburgh Company as an outstanding policy or as a liability of any sort; that the Metropolitan Company made the contract with the receiver for the Pittsburgh Company as alleged in the petition; that the policy was not taken into account in the calculation of the assets of the Pittsburgh Company; that the insured, Eugene Benton, was not notified of the receivership of the Pittsburgh Company or of the contract between the receiver and the Metropolitan Company; that, "not having had any notice of said contract, said Eugene Benton did not enter into any agreement consenting to it;" that if the policy had any legal reserve on May 7, 1917, the amount of the reserve and the amount of the lien to be placed against it were correctly calculated in the petition; that the insured died on September 4, 1930, and the Metropolitan Company denied liability and refused to furnish blanks for proof of loss; that the Union, Security, and Pittsburgh Companies have been dissolved, and the receiver of the last-named company has been discharged; that the New York statute contains the provision set out in the defendant's answer; and that the insured did not make the demand or surrender his policy within six months after the lapse of the policy on April 10, 1905. The case was submitted to the judge without a jury. Judgment was rendered for the plaintiff, and the defendant excepted.

The first question presented for determination is: did the insured forfeit his policy by a failure to elect one of two options and to surrender his policy within six months from April 10, 1905, the date to which the premiums were paid? In considering this, we have in mind numerous decisions which hold that if insurance policies contain inconsistent, conflicting or ambiguous provisions, the construction *favorable to the insured must be given;* and the further principle that *the law does not favor forfeitures.* As stated in *State Mutual Life Insurance Co.* v. *Forrest,* 19 *Ga. App.* 296 (91 S. E. 428), "Insurance policies are prepared and proposed by the insurers; and where such a contract is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the *insured.* Especially is this true where, as in this case, the construction insisted upon by the company would work a *forfeiture* of the policy, while the other will preserve the obligations of both the company

and the insured." (Italics ours.) See also *Winder National Bank* v. *Ætna Life Ins. Co., 36 Ga. App.* 703, 705 (137 S. E. 848). *It is admitted that the insured had paid for a reserve of $600. This belonged to the insured, and not to the company.* Neither the insured nor the beneficiary has ever received this reserve fund which was bought and paid for. What became of it? The general policy of the law is against it being forfeited, and in recognition and pursuance of that policy of the law the contract in the instant case provided, in effect, that it should not be forfeited, as is shown by paragraph 2 of the policy entitled "Nonforfeiture." The terms which the defendant company now insists the insured should have complied with, in order to get the benefit of this reserve fund which he had already bought and paid for, were not embodied in the policy. They were embodied in a statute of New York, which was not set out in the policy and to which mere reference was made in the policy. The policy was not complete within itself. The effect of the contention of the defendant is that the insured would have to know a statute of New York in order to know his rights under this insurance policy. It would be a dangerous precedent to hold that an insurance company could circumvent the rights of the insured by *mere reference* to a statute of a *foreign* State, not known to the insured and difficult of ascertainment. However, conceding but not deciding that the New York statute would govern, certainly, under the law which requires interpretations favorable to the insured and the prevention of forfeitures in cases of doubtful interpretation, the insured was entitled to paid-up insurance of $600 under the policy sued on.

The New York statute provides that the insured, on demand made, with the surrender of the policy within six months, may use his reserve fund as a single premium to carry the insurance for the full amount so long as it is sufficient to pay for the full amount, or he may use it to purchase paid-up insurance for a proportionate amount of the face value of the policy. And the statute thereafter and in the same connection says: "*If* no such agreement be *expressed in the* application or *policy,* such single premium may be applied in either of the modes above specified at the option of the owner of the policy, notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy." (Italics ours.) This provision of the

statute (which is designed to *prevent* forfeitures) certainly indicates that election of the option is to be made only in cases where it is not already "expressed in the application or policy." In the instant case it was not necessary to make an election of the option when the insured ceased to pay premiums, because it was already made and expressed in the policy. The policy, under the head of "Non-forfeiture," provides that "if premiums upon this policy for not less than three full years have been paid in cash, and the policy be terminated by the non-payment of any premium when due, the owner will be entitled to a non-participating paid-up policy (for such proportion of the amount of this policy as the number of full years' premiums paid bears to the total number required) ; as specified in the statutes of the State of New York. . . ." This provision of the policy plainly and unqualifiedly provides for non-participating, paid-up insurance in the event the policy is terminated by non-payment of premiums. If the other option had been chosen, the policy would have provided, in effect, that the insurance for the full amount would be continued in force so long as the reserve fund was sufficient to carry it. The first-named option was *expressed in the policy,* evidently as a business precaution in the event the insured could not continue payment of the premiums; and there was no necessity for the insured to reiterate his choice of options. This reserve fund was a provision of the policy contract. The contract of insurance containing this provision did not cease to be an outstanding policy when payment of premiums stopped. It remained in force to the extent of this secondary insurance provided for therein, because the option had previously been elected by the insured and expressed in the policy; and being expressed in the policy contract of the insured it was a "property right" which survived to the beneficiary. *Veal* v. *Security Mutual Life Ins. Co.,* 6 *Ga. App.* 721 (2) (65 S. E. 714) ; *McEachern* v. *New York Life Ins. Co.,* 15 *Ga. App.* 222 (3, 4) (82 S. E. 820).

Since the assured had not forfeited his policy, the next question presented is whether the Metropolitan Company assumed liability thereunder. In determining this we must consider that, under the ruling hereinbefore made, the policy remained an "outstanding policy"—a policy "in force." It was also an "unmatured" policy, since it would not mature and become payable until the

death of the insured, which occurred in September, 1930. The Union Company, which wrote the policy, and the Security Company, which by endorsement acknowledged its liability under the terms of the policy, each accepted three years' premiums from the insured, and it is unnecessary to refer to the contract between these companies. The contract between the Security Company and the Pittsburgh Company provides that "It is the purpose of this agreement to more effectually secure to the policyholders of the Security Trust & Life Insurance Company *payment of their policy contracts* already matured or *which may hereafter mature* according to their terms and conditions, by the *perpetuity* of the business, and to that end to transfer to the said Pittsburgh Life & Trust Company as and for a consideration of such assumption, and for the assumption of the payment of all unpaid death claims *and all other policy obligations,* sufficient of the assets of the said second party [the Security Company] to enable the said first party [the Pittsburgh Company] *to carry out the said policy contracts. .* . Now, therefore, in consideration of the *assumption of the Pittsburgh Life & Trust Company,* of Pittsburgh, Pa., of *all the liabilities* of said Security Trust & Life Insurance Company to its living policyholders in good standing, of any kind or nature whatsoever, as evidenced by its policies now *in force,* and also in consideration of the assumption of the payment of all unpaid death claims *and all other policy liabilities,* the Security Trust & Life Insurance Company will transfer" certain securities and money to the Pittsburgh Company. Under this contract there can be no doubt that the *Pittsburgh Company assumed liability* for *all policies in force and for all other policy liabilities;* and the defendant company admitted that this contract and other contracts between the companies involved were duly executed as alleged. Another contract between the Security Company and the Pittsburgh Company, relating to purchase of stock, is based upon the fact that the business of the Security Trust & Life Insurance Company *had been reinsured in the Pittsburgh Life & Trust Company.* This brings us to a consideration of the contract between the receiver of the Pittsburgh Company and the Metropolitan Company.

The defendant company insists that it is not liable on the Benton policy, because it was not listed on the books of the Pittsburgh Company, and because the assumption of liability by the defend-

ant company was subject to the approval and consent of Benton, which was not given. With certain exceptions, not material to this case, the Metropolitan Company agreed "to assume, with consent of the several owners and holders thereof, the policies of insurance of the Pittsburgh Company, *including the policies of all companies reinsured by it, in force* by their terms on the 7th day of May, 1917. . . This agreement shall apply . . to *all unmatured policy contracts,* . . it being intended that this agreement shall cover, as and from the 7th day of May, 1917, *all policy* and annuity *contracts of the Pittsburgh Company* then *in force* and *unmatured,* where the holders and owners are willing to and shall consent to the assumption of their contracts by the Metropolitan Company under the terms herein proposed." It was further agreed that "all books, papers, letters, records, cards, files, and fixtures of the Pittsburgh Company relating to its policy and annuity contracts" should be turned over to the Metropolitan Company. The policy sued on was "in force," and therefore was assumed by the Metropolitan Company. Since the *Metropolitan Company assumed liability for all policies of the Pittsburgh Company in force, it was the business of the Metropolitan Company to ascertain what policies were in force.* They had all books, records, and files of the Pittsburgh Company, which necessarily disclosed the deal between the Pittsburgh Company and the Security Company; and by proper diligence and investigation they could have learned of the instant contract on which the Security Company accepted three years' premiums. But be that as it may, since the Metropolitan Company assumed liability for all insurance of the Pittsburgh Company in force, the burden was on the Metropolitan Company to know or ascertain what it was assuming, and its failure to do so showed a lack of business precaution and diligence *for which the insured was not responsible.* Both the receiver of the Pittsburgh Company and the Metropolitan Company *agreed to use diligence* in getting the consent of policyholders. In this respect also the defendant company was apparently lacking in diligence, for it did not notify the insured in this case. It was not within the power of the insured to give his consent to the assumption of liability by the Metropolitan Company, because *he had no notice and knew nothing of the receivership of the Pittsburgh Company or of the contract between the receiver and the Metropolitan*

*Company.* To hold that an insurance company could assume the obligations of a defunct insurance company which, though insolvent, still had some assets, under a contract which made the assumption of liability dependent upon the consent of policyholders who were in total ignorance of the contract between the two companies, and then for the companies to fail to notify the policyholders and by so doing nullify their contracts, would furnish ample opportunity for fraud. It is a matter of common knowledge that practically every standard life-insurance company has thousands of policyholders who have paid-up policies put away which they never look at, the policyholder resting secure in the thought that his insurance is paid for, and that it will be paid to his beneficiary upon his death. For such a policy to be forfeited without notice to the insured would be a flagrant injustice.

There are some provisions in the contract between the receiver and the defendant company that are inconsistent and of doubtful interpretation. For instance, the contract provides that the Metropolitan Company, with the consent of the policyholders insured or reinsured by the Pittsburgh Company, may place against his or her policy a lien equal to 33-1/3 per cent. "of the legal reserve thereon as it has been established and carried on the books of the Pittsburgh Company on May 7, 1917;" and the defendant company insists that since the instant policy was not carried on the books of the Pittsburgh Company' on said date, it is not liable thereon. Yet the contract between the receiver and the defendant company undoubtedly provides that the defendant company assumes liability on *all* policies *insured or reinsured* by the *Pittsburgh Company* which were *in force* on May 7, 1917, and the policy sued on *was in force* on said date. The insured had no knowledge of and was in no way responsible for his policy not being on the books of the Pittsburgh Company. Having paid for it, he had a right to presume that it was on the books. It is undisputed that the insured had bought and paid for this reserve, and that it belonged to him. Neither he nor his beneficiary ever received the benefit of the reserve. His policy expressly provided that in the event of non-payment of premiums, after three or more yearly premiums had been paid, this reserve should be applied as a single premium for paid-up insurance. This paid-up insurance remained in force. The insured was in no way responsible for it not being

on the books of the Pittsburgh Company. Each company involved, including the defendant, *assumed the liability on policies of the preceding company which were in force.* The insured had no notice of the receivership of the Pittsburgh Company or of the contract between the receiver and the defendant, and therefore *had no opportunity to give his consent* to the assumption of liability by the defendant. The defendant having assumed liability for all policies in force, the burden was upon it to ascertain what policies were in force and what it was assuming. Under the law and the facts, the judge properly ruled against the forfeiture of the policy; and the judgment in favor of the plaintiff is

*Affirmed. MacIntyre and Guerry, JJ., concur.*

BROYLES, C. J., dissenting. Conceding that the policy was in force as secondary insurance on May 7, 1917, and that it was a liability assumed by the Pittsburgh Company, it is my opinion that the Metropolitan Company, under the terms of its contract with the receiver of the Pittsburgh Company, did not assume that liability. It is clearly stated and reiterated again and again in the contract that the Metropolitan Company assumes only those policies of insurance and annuity contracts of the Pittsburgh Company in force on May 7, 1917, *where the owners and holders thereof consent to such assumption, and agree that the Metropolitan Company may place against his or her policy a lien equal to 33-1/3 per cent. of the legal reserve thereon.* It is further plainly stated in the contract that the Metropolitan Company *assumes only those policies on account of which assets of the Pittsburgh Company are transferred to the Metropolitan Company.* The contract of assumption is not ambiguous, and the foregoing construction of it is the only reasonable and legal one possible. And since the undisputed evidence shows that the owner of the policy in this case *never consented to its assumption by the defendant company, and that no assets of the Pittsburgh Company were transferred to the defendant company on account of the policy, it is apparent that the policy was not among those assumed by the Metropolitan Company.* This proposition is so plain that citation of authorities is unnecessary.

It is true that the insured could not consent to the assumption, because he had no notice and knew nothing of the contract between the receiver and the defendant company; and the defendant could

not give him notice because his name was not on the books of the Pittsburgh Company, and the defendant company did not know that such a policy existed. But, regardless of the reason for the insured not consenting, the fact remains that the Metropolitan Company assumed liability *only on those policies where the owners consented to the assumption; and the assured in the instant case did not so consent.* The business of the Union Company (which wrote the policy) was taken over by the Security Company, then by the Pittsburgh Company, then by the receiver, and then by the Metropolitan Company. Since it is agreed that the instant policy was not on the books of the Pittsburgh Company, and that the Pittsburgh Company took over the business of the Security Company, it is probable that the Security Company did not list the instant policy as a policy in force when it turned over its business to the Pittsburgh Company in September, 1906. Since the premium on the policy was approximately seventeen months past due, the Security Company probably considered that the policy was void, and for this reason did not list it as a policy in force. Conceding that the Security Company should have listed it because of the secondary insurance provided for therein, the Metropolitan Company, under its contract with the receiver of the Pittsburgh Company, can not be held responsible for that error; and however unfortunate it may be for the insured, the Metropolitan Company had no knowledge of the existence of such a policy, and could not notify the insured and obtain his consent to its assumption of his policy. And *without that consent, and without the transfer of assets on account of the policy, there was no assumption of the policy by the defendant company.* The court erred in rendering judgment for the plaintiff.

ON MOTION FOR REHEARING.

PER CURIAM. The plaintiff in error insists that the court is in error in stating that the defendant insurance company assumed liability on outstanding policies of the Pittsburgh Company in force on May 7, 1917, whereas such assumption of liability was on the condition: "with the consent of the several owners and holders thereof, and subject to an agreement on the part of each holder and owner." It is unquestioned that on May 7, 1917, the Pittsburgh Company was liable on the policy sued on, under its assumption agreement made with the Security Trust and Life Insurance

Company. On August 3, 1917, the receiver of the Pittsburgh Company, subject to the approval of the court, which was obtained, entered with the defendant company into an agreement whereby it was stipulated that the assets of the Pittsburgh Company "do not exceed in value the amount set opposite such item in such schedule, and that a fair market value of such assets amounts to only 72-1/2 % of its liabilities." The liabilities consisted of its obligations to policyholders. The contract recited that the defendant company being also "engaged in the business of issuing insurance policies," and "it is desired by the parties to effect an arrangement whereby the policyholders of the Pittsburgh Company may with the assent of such holders of contracts have their contracts assumed by the Metropolitan Company subject to the conditions believed to be fair and equitable to all parties concerned," and that such also was the desire of the insurance departments of the States of New York and Pennsylvania in order that policyholders in the Pittsburgh Company "may avoid the loss of insurance protection and the expense usually incident to the liquidation of a life-insurance corporation," the defendant company agreed to assume, "with the consent of the several owners and holders thereof," all the insurance in force with the Pittsburgh Company on May 7, 1917, "and, except as herein provided, to carry out all the provisions and agreements contained in said policies, subject to an agreement of each holder that the Metropolitan Company may establish and place against his or her policy a lien equal to 33-1/3 % of the legal reserve thereon as it has been established and carried on the books of the Pittsburgh Company." Both parties agreed "to use all possible diligence to obtain the consent" of the policyholders. The receiver was to cause to be assigned to the Metropolitan Company the assets of the Pittsburgh Company at a valuation fixed at 72-1/2 % of the reserves on such policies. It was further agreed "that where the policyholders shall establish claims against the receiver under their contracts, instead of accepting such assumption by the Metropolitan Company, it will pay to the receiver, upon demand, a sum equal to the amount that shall have been paid by said receiver to the Metropolitan Company on account of policyholders. . . Upon such repayment the Metropolitan Company shall be relieved of any and all responsibility with respect to such policies." The con-

tract further provided that where assent was obtained to the transfer, the receiver was to be relieved of all further liability on the policy. The provision in the policy that the assent of the policyholders be obtained was for the purpose of limiting the liability of the Metropolitan Company to an amount less than the face value of the policy or to an amount which was agreed on as 72-1/2 % of the face value thereof. The entire assets were transferred to the Metropolitan Company with the proviso that in event the policyholder refused the contract and proceeded against the receiver, the Metropolitan Company would be liable to pay back to the receiver an amount equal to 72-1/2 % of the claim, and thus relieve itself of further responsibility. The insured in the present case, never having received notice of any such agreement, did not assent or dissent thereto. After the claim matured by reason of the death of the insured, the beneficiary could elect to proceed as he has done on the contract as made between the parties, and such suit was properly maintained on the contracts as shown by the evidence. If a proceeding had been had against the receiver, the defendant company would have been liable under its contract to pay to the receiver, for the benefit of the plaintiff in this case, the amount found to be due. As discussed in the main opinion, the insured, under the policy issued to him by the American Union Life Insurance Company, was entitled, after three full years' premiums had been paid, to certain secondary insurance under the non-forfeiture clause. We have not overlooked or failed to consider any of the contentions made. We adhere to our previous ruling.

*Rehearing denied. MacIntyre and Guerry, JJ., concur. Broyles, C. J., dissents.*