CHAPMAN, executor, *v.* LIPSCOMB-ELLIS COMPANY.

No. 14139. SEPTEMBER 22, 1942. REHEARING DENIED OCTOBER 14, 1942.

642

*Edgar & Allan Watkins* and *Julian S. Carr,* for plaintiff. *Sutherland, Tuttle & Brennan, Herbert R. Elsas, B. F. Johnson Jr.,* and *Alston, Foster, Sibley & Miller,* for defendants.

ATKINSON, Presiding Justice. It is seen from the foregoing statement that the sole question to be decided is whether or not a policy of life insurance, valid when issued, may be collected by the named beneficiary, where during the life of the policy, and after the payment of several annual premiums by the corporate beneficiary, the business relationship which originally and for some years gave rise to the insurable interest was terminated. In other words, is it essential that the insurable interest required by the Code, § 56-901, continue until the death of the person whose life is in-

sured? This court has not heretofore dealt with the exact question, although it has been widely treated with varying results in other jurisdictions. The Code declares: "A life-insurance policy is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another shall die within the time limited by the policy. The life may be that of the insured or of another in the continuance of whose life the insured has an interest." § 56-901. "The insured may direct the money to be paid to his personal representative or to his widow, his children, or his assignee. Upon such direction given, and assented to by the insurer, no other person may defeat the same: Provided, however, that assignment of the money shall be good without such assent." § 56-903. This court has held, in reference to debtor-creditor relationships, that "A creditor has, for the purpose of indemnifying himself against loss, but for no other, an insurable interest in the life of his debtor," but "This interest can not exceed in amount that of the indebtedness to be secured." *Exchange Bank of Macon* v. *Loh,* 104 *Ga.* 446 (31 S. E. 459, 44 L. R. A. 372). This line of decisions treats insurance policies taken out in favor of or assigned to a creditor as contracts of indemnity, whereby it is sought to protect the creditor against loss; and in the *Loh* case it was said, "Whenever it is admitted that a contract of life-insurance made for the benefit of a creditor is not one having indemnity for its object, we necessarily stamp it as a purely wagering contract." The ruling was recognized and applied in *Saville* v. *Lee,* 43 *Ga. App.* 263 (3) (158 S. E. 441), where it was said: "As a general rule, the proceeds of a policy in which a third person is named as beneficiary belong exclusively to such beneficiary as an individual, and are not subject to administration as an estate of the insured *(Doody Co.* v. *Green,* 131 *Ga.* 568 (2), 62 S. E. 984; *Cates* v. *Bankers Health &c. Insurance Co.,* 27 *Ga. App.* 159, 107 S. E. 615; 37 C. J. § 566); but where it appears as a matter of fact that the policy is held by a creditor merely as security for a debt of the insured, the creditor is entitled only to reimbursement, and is bound to account for the balance to the legal representative of the debtor. . . *Morris* v. *Georgia Loan Co.,* 109 *Ga.* 12 (34 S. E. 378, 46 L. R. A. 506); *Sprouse* v. *Skinner,* 155 *Ga.* 119 (116 S. E. 696); 37 C. J. 568, § 328." This court in the *Loh* case, however, declined to hold that ordinary contracts of life insurance, "whereby

a man insures his own life for the benefit of those dependent upon him, are contracts for indemnity merely." Mr. Justice Little, who showed by a specially concurring opinion in the *Loh* case (104 *Ga.* 468) that he disagreed with much that was said by Lumpkin, P. J., in the opinion (104 *Ga.* 446), declared for the court, in *Union Fraternal League* v. *Walton,* 109 *Ga.* 1 (34 S. E. 317, 46 L. R. A. 424, 77 Am. St. R. 350) : "While a valid contract of insurance can not lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet, as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote. Such a contract can not be defeated because of the want of insurable interest in the beneficiary, when it appears that the person whose life was insured acted for himself, at his own expense and in good faith, to promote the interest of the beneficiary, in taking out the policy. A contract so entered into is in no sense a wagering or speculative one." Lumpkin, P. J., dissented. In the opinion in that case is an illuminating discussion on the question of public policy which restricts or forbids the procuring of insurance on the life of another person by one who has no insurable interest therein. It was said: "The rule which restricts the execution of a valid contract of insurance on the life of another to one who has an insurable interest in that life is founded alone on public policy, and it may be stated in general terms that where one has an interest in a life that interest is insurable. Beyond all controversy a man has an insurable interest in his own life, and we fail to see, when having that interest he enters into a contract with an insurer, by which for a stipulated sum which he periodically pays, the insurer becomes liable to pay a given sum of money at the death of the insured, why he who is most interested, whether actuated by ties of relationship, motives of friendship, gratitude, sympathy or love, may not make the object of his consideration the recipient of his own bounty." The same conclusion as to public policy was reached, on similar reasoning, in *Ancient Order United Workmen* v. *Brown,* 112 *Ga.* 545 (37 S. E. 890). So the contract was not to be treated as one of indemnity *merely,* unless the facts showed that to be its purpose as in the debtor-creditor cases. Until the case of *Rylander* v. *Allen,* 125 *Ga.* 206, 214 (53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355),

it had not been decided by this court whether an assignment of a life-insurance policy, originally valid and taken out in good faith, to a person who had no insurable interest in the life of the insured, was valid. The court, recognizing conflict in other jurisdictions, held that such an assignment was valid, when not made "by way of cover for a wager policy." The exhaustive reasoning by Chief Justice Fish in the opinion saves any extended discussion of those underlying principles here. That decision has fixed the rule in this State that the assignee of a life-insurance policy, valid in its inception, although having no insurable interest in the life of the insured, may collect the proceeds of such a policy, and renders inapplicable as authority, on the question now before the court, many decisions from other jurisdictions which held contrary to that rule. See *Rylander* case, supra.

It is to be borne in mind that under the facts in the instant case the original contract was made, not with Chapman, but by his consent with the corporate beneficiary, predecessor of the present claimant. The corporate beneficiary paid all of the premiums. Chapman paid none. The policy was never payable to him or his estate, and under its express terms he never had the right to name or change the beneficiary. The policy when issued was valid, and, as respects the quality of property, was a chose in action like other contracts. *Metropolitan Life Insurance Co.* v. *Benton,* 56 *Ga. App.* 298, 303 (192 S. E. 520). In Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U. S. 457, 460 (24 L. ed. 251), it was held: "A policy of life insurance originally valid does not cease to be so by the cessation of the assured party's interest in the life insured, unless such be the necessary effect of the provisions of the instrument itself." In his reasoning upon this question Mr. Justice Bradley said: "The essential thing is, that the policy shall be *obtained* [italics ours] in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest." In Lincoln National Life Insurance Co. v. Scales, 62 Fed. 2d, 582, a case from Texas, Judge Sibley delivered the opinion for the Circuit Court of Appeals, where a corporation held an insurance policy on the life of Wright, who was an officer, stockholder, and director. Before Wright's death the business of the corporation was suspended, and at the time of his death its affairs were in the hands of a trustee in bankruptcy. Upon the same principles

here urged it was contended, in behalf of Wright's executor, that the cessation of insurable interest rendered the policy collectible by his heirs at law. The policy had been originally procured by Wright, payable to his estate, but was immediately assigned by him to the corporation. The court in dealing with the question treated it as if it had been under facts appearing in the instant case. It is provided by statute in Texas (Rev. St. 1925, art. 5048) that a corporation may be named beneficiary in a policy of insurance issued on the life of its officer or stockholder, and that as such beneficiary the corporation shall have an insurable interest in the life of such person, to the full face value of the policy. Judge Sibley said: "The public policy thus announced, extending a corporation's insurable interest to the life of any officer or stockholder regardless of his activity in or importance to the corporation's business, goes to great lengths, but Wright's connection with this corporation was within principles now recognized generally. United States v. Supplee-Biddle Hardware Co., 265 U. S. 189, 44 S. Ct. 546, 68 L. ed. 970; Wellhouse v. United Paper Co. (C. C. A.) 29 F. (2d) 886. The bankruptcy of the furniture company and the cessation of Wright's importance to its business did not terminate the insurance. A life insurance which is supported by an insurable interest when taken does not end when the interest ceases. An extreme case was where the insurable interest was that of a wife in her husband's life. They were divorced, and each remarried, but the wife collected her policy when the former husband died. Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U. S. 457, 24 L. ed. 251. So where business insurance was taken by a corporation at its expense on the life of its officer, the insurance did not go to him when he severed his connection with the corporation, but was collectible by the original beneficiary. Wellhouse v. United Paper Co. (C. C. A.) 29 F. (2d) 886. The bankruptcy of the furniture company here did not end its rights in this insurance nor increase those of Wright."

A similar ruling was made in Wellhouse v. United Paper Co. (C. C. A.) 29 F. (2d) 886, where it was said: "In obtaining the policy the insured acted, not for himself individually, but for the paper company, which paid for the insurance. The insurance having been acquired at the expense and for the benefit of the paper company, that company was the owner of the policy and the bene-

ficiary of its provisions, including the one as to changing the beneficiary." In Griffin *v.* McCoach, 116 Fed. (2d) 261, it was held, in reference to an insurance contract entered into and governed by the laws of New York, that "since a fair and proper insurable interest was present when the policy was issued, and it was taken out in good faith, the purpose of the rule condemning wagers was sufficiently satisfied. Modern policies of insurance are no longer mere indemnity contracts, but are property and have property values." This decision was reversed (Griffin *v.* McCoach, 313 U. S. 498, 61 Sup. Ct. 1023, 85 L. ed. 1481), but the reversal was upon the proposition that the Circuit Court of Appeals erred in giving effect to the contract under the New York law; and the case was remanded, so that the court could determine whether, as contended, the terms of the contract violated public policy of the State of Texas. The rule in that State is (contrary to that held by this court in *Rylander* v. *Allen,* supra) that in order for the assignment of a life-insurance policy to be valid, the assignee must be one who has an insurable interest in the life of the insured. Finding this to be the law of Texas, and adhering to the principle ruled in Erie Railroad Co. *v.* Tompkins, 304 U. S. 64 (58 Sup. Ct. 817, 82 L. ed. 1188), the Circuit Court of Appeals subsequently ruled, in Griffin *v.* McCoach, 123 Fed. 2d, 55, that the assignee of the life-insurance policy could not recover. In Grigsby *v.* Russell, 222 U. S. 149 (32 Sup. Ct. 58, 56 L. ed. 133), it was held in the opinion by Mr. Justice Holmes, after a review of conflicting cases upon the subject: "The rule of public policy that forbids the taking out of insurance by one on the life of another in which he has no insurable interest does not apply to the assignment by the insured of a perfectly valid policy to one not having an insurable interest. ·In this case, held, that the assignment by the insured of a perfectly valid policy to one not having any insurable interest, but who paid a consideration therefor and afterwards paid the premiums thereon, was valid, and the assignee was entitled to the proceeds from the insurance company as against the heirs of the deceased. A valid policy of insurance is not avoided by a cessation of insurable interest, even as against the insurer, unless so provided by the policy itself. Con. Mut. Ins. Co. *v.* Schaefer, 94 U. S. 457 [supra]. Warnock *v.* Davis, 104 U. S. 775 [26 L. ed. 924], distinguished. Where there is no rule of law against paying to an assignee who

has no insurable interest in the life of the insured, and the company waives a clause in the policy requiring proof of interest, the rights of the assignee are not diminished by such clause as against the insured's administrator." It was stated on page 156: "Coming to the authorities in this court, it is true that there are intimations in favor of the result come to by the Circuit Court of Appeals. But the case in which the strongest of them occur was one of the type just referred to, the policy having been taken out for the purpose of allowing a stranger association to pay the premiums and receive the greater part of the benefit, and having been assigned to it at once. Warnock v. Davis, 104 U. S. 775 [supra]. On the other hand it has been decided that a valid policy is not avoided by the cessation of the insurable interest, even as against the insurer, unless so provided by the policy itself. Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457 [supra]. And expressions more or less in favor of the doctrine that we adopt are to be found also in Ætna Life Ins. Co. v. France, 94 U. S. 561 [24 L. ed. 287]; Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591 [6 Sup. Ct. 877, 29 L. ed. 997]. The foregoing authorities and the principles underlying them lead us to the view as expressed by the trial judge: "An insurable interest by the employer corporation in the life of an officer and valuable employee at the inception of a valid life-insurance contract is sufficient, and termination of the employment does not make it a wager contract, and the right of the employer to recover the proceeds of the policy is not affected by the severance of the employee's connection with the employer."

Under our Code one may insure the life of another in the continuance of whose life he has an interest. The statute says nothing about the continuance of such insurable interest, but seems to require only an insurable interest at the inception of the insurance contract. After the contract is made it has "the sanction of law." *Rylander* v. *Allen*, supra. The rights of the parties to the contract become fixed. The terms are binding on both. It happens that in the instant case premiums were payable annually, and payment of them was made for about fourteen years, although we know of no reason or law why one single gross premium might not have been agreed upon and paid at the time the policy was issued. If it were to be held that the insurable interest must continue until the date of the insured's death, corporations might be put to great

hazard and might lose valuable rights acquired under valid contracts undertaken in perfect good faith. The views here expressed do not mean that the mere relationship of employer and employee could be made use of as a cloak or cover for a mere wagering contract. See *Rylander* v. *Allen,* supra; *Quillian* v. *Johnson,* 122 *Ga.* 49 (49 S. E. 801); *Turner* v. *Davidson,* 183 *Ga.* 404 (188 S. E. 828); *Turner* v. *Davidson,* 188 *Ga.* 736 (4 S. E. 2d, 814); *Davidson* v. *Turner,* 191 *Ga.* 197 (12 S. E. 2d, 308), in which the present question was not dealt with, but merely the question of what usually was required to constitute an insurable interest in such a relationship. In accordance with the foregoing view, the judgment is *Affirmed. All the Justices concur.*