WAGES, administratrix, *v.* WAGES; *et vice versa.*

Nos. 15790, 15791.   APRIL 17, 1947.

*Carlisle & Bootle* and *Farkas & Burt,* for plaintiff.
*Bennet, Peacock & Perry,* for defendant.

ATKINSON, Justice. (After stating the foregoing facts.) The defendant demurred to the original petition and to the peti-

tion as amended on the grounds: It set forth no cause of action, either legal or equitable; it shows on its face that the plaintiff, as well as the insured, was guilty of laches, and the suit is barred as a result thereof; the plaintiff as named therein is not the proper party plaintiff.

This is not a suit against the insurance company, making material for consideration the provisions of the policy, but is an action by the administratrix of the estate of the insured against one alleged to be illegally withholding funds belonging to the estate, and no question arises as to the provisions of the policy. The petition shows that the insured died on August 29, 1943, and the suit was filed on May 5, 1945.

In *Quillian* v. *Johnson,* 122 *Ga.* 49 (5) (49 S. E. 801), it was held: "Irrespective of whether the holder of a policy of insurance on his own life may legally sell and assign the policy to one having no insurable interest in his life, the policyholder is certainly not at liberty to make the policy the subject-matter of a purely wagering and speculative contract between himself and a person having no interest therein." In *Union Fraternal League* v. *Walton,* 109 *Ga.* 1 (34 S. E. 317, 46 L. R. A. 424, 77 Am. St. R. 350), it was held: "While a valid contract of insurance can not lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet, as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote. Such a contract can not be defeated because of the want of insurable interest in the beneficiary, when it appears that the person whose life was insured acted for himself, at his own expense and in good faith, to promote the interest of the beneficiary, in taking out the policy. A contract so entered into is in no sense a wagering or speculative one." It was said in the opinion: "The rule which restricts the execution of a valid contract of insurance on the life of another to one who has an insurable interest in that life is founded alone on public policy, and it may be stated in general terms that where one has an interest in a life that interest is insurable. Beyond all controversy a man has an insurable interest in his own life, and we fail to see, when having that interest he enters into a contract with an insurer by which, for a stipulated sum which he periodically pays, the insurer

becomes liable to pay a given sum of money at the death of the insured, why he who is most interested, whether actuated by the ties of relationship, motives of friendship, gratitude, sympathy or love, may not make the object of his consideration the recipient of his own bounty." This decision was followed in *Rylander* v. *Allen*, 125 *Ga.* 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355), where it was held: "One has the right to procure insurance on his own life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy." In *Exchange Bank of Macon* v. *Loh*, 104 *Ga.* 446 (31 S. E. 459, 44 L. R. A. 372), it was held: "A creditor has for the purpose of indemnifying himself against loss, but for no other, an insurable interest in the life of his debtor." The interest of the creditor in the proceeds of an assigned policy of insurance is stated in *Morris* v. *Georgia Loan Co.*, 109 *Ga.* 12 (34 S. E. 378, 46 L. R. A. 506), as follows: "A creditor of a person having his life insured, who takes an assignment of the policy to secure his debt, is only entitled to retain after collection of the policy such an amount as is sufficient to pay the debt together with all advances the creditor has made to keep the policy in force." In *Turner* v. *Davidson*, 183 *Ga.* 404, 406 (188 S. E. 828), it was said: "While it is true that it has been held that the question of lack of insurable interest can be raised only by the insurer *(Clements* v. *Terrell*, 167 *Ga.* 237, 145 S. E. 78, 60 A. L. R. 969), this principle, we think, is applicable only where it is sought to invalidate the policy on that ground. The fact of a lack of insurable interest may be considered as throwing light upon the nature of the transaction between the insured and the beneficiary or assignee,—as to whether or not it invaded the rule as to public policy, so as to determine their respective equities. It makes no difference that the insurer has for several years been paying the benefits to Davidson, thus apparently waiving any defense it may have on the ground of lack of insurable interest of the beneficiary or assignee in the life of the insured. Such a waiver does not exculpate Davidson, whose testimony and that of his witnesses confirm his intention to make a wagering contract. Under the testimony of the defendant and the insurance agent, the insured was but incidentally a party to a transaction which in its inception was contrary to public policy. It is true that in

the Code, § 37-112, it is provided that 'When both parties are at fault, and equally so, equity will not interfere, but will leave them where it finds them;' but it is also provided in that same section that 'The rule is otherwise if the fault of one overbalances, decidedly, that of the other.' In this case Davidson and the insurance agent took advantage of Turner's embarrassment and colluded to have the insurance policy issued in favor of Davidson. And if the arrangement to have the policy issued on the life of the insured, upon his application, and then assigned by him to the real beneficiary, Davidson, was a cover for a speculating risk, contravening the general policy of the law, it would not be sustained."

It has also been held: "As a general rule the proceeds of a policy in which a third person is named as beneficiary belong exclusively to such beneficiary as an individual, and are not subject to administration as an estate of the insured (*Doody Co.* v. *Green,* 131 *Ga.* 568 (2), 62 S. E. 984; *Cates* v. *Bankers Health &c. Insurance Co.,* 27 *Ga. App.* 159, 107 S. E. 615; 37 C. J. 566); but where it appears as a matter of fact that the policy is held by a creditor merely as security for a debt of the insured, the creditor is entitled only to reimbursement, and is bound to account for the balance to the legal representative of the debtor. . . *Morris* v. *Georgia Loan Co.,* 109 *Ga.* 12 (34 S. E. 378, 46 L. R. A. 506); *Sprouse* v. *Skinner,* 155 *Ga.* 119 (116 S. E. 606); 37 C. J. 568, § 328." *Saville* v. *Lee,* 43 *Ga. App.* 263 (4) (158 S. E. 441); *Chapman* v. *Lipscomb-Ellis Co.,* 194 *Ga.* 640, 643 (22 S. E. 2d, 393, 143 A. L. R. 286).

Trusts are implied, "1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another." Code, § 108-106. "Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *O'Neal* v. *O'Neal,* 176 *Ga.* 418 (2) (168 S. E. 262); *Murray County* v. *Pickering,* 196 *Ga.* 208 (2) (26 S. E. 2d, 287); *Harris* v. *Rowe,* 200 *Ga.* 265, 270 (2) (36 S. E. 2d, 787). A constructive trust is "not created by any words either expressly or impliedly evincing a direct intention to create a trust, but by

the construction of equity in order to satisfy the demands of justice." 65 C. J. 223, § 14. However, "If, from all the facts and circumstances, an implied trust is otherwise established, it is not destroyed by an express verbal agreement which may have constituted a part of the transaction." *Hudson* v. *Evans*, 198 *Ga.* 775 (2b) (32 S. E. 2d, 793).

The allegations of the petition as contained in counts one and two were sufficient to allege the creation of a constructive trust, and a cause of action good against the general grounds of demurrer.

The defendant also demurred on numerous special grounds. These have been carefully examined but have been found to be without merit, and no extended discussion is deemed necessary, especially in view of the ruling on the merits in the fifth division of the opinion.

■ Special grounds 1 to 6 inclusive of the motion for new trial complain of the admission in evidence of conversations between the defendant and the deceased insured, to the effect that the insured had given the policy and its benefits to the defendant. Substantially the same testimony, from an agent of the insurance company, was afterwards admitted without objection; and, under repeated decisions of this court, the previous error, if any, was thereby rendered harmless.

■ The 7th special ground complains of the following charge: "If you should find the policy of insurance in question in this case lapsed because of the non-payment of premiums, and that [the insured] voluntarily caused the same to be reinstated, and in good faith had [the defendant] named as beneficiary, intending in the event of his death that [the defendant] should have the proceeds of the policy, and this was not done simply to permit [the defendant] to speculate on the life of [the insured], then the defendant would be entitled to prevail, and that would be true even though it appeared that [the defendant] was [to pay?] and did pay the premiums necessary to reinstate and keep the policy in force."

While numerous objections are stated in this ground, they are found upon examination to be without merit, and no extended discussion is deemed necessary. The charge fully presented to the jury the respective contentions of the parties, correctly stated the applicable principles of law, and was not in conflict with another portion of the charge, as insisted by the movant.

■ The 8th special ground complains that the court erred in failing to give the following requested written charge: "A cousin or half cousin, simply by reason of that relationship, has no beneficial interest in the life of the insured. That is, the fact that the defendant, Marvin Wages, is the half first cousin of the deceased, John T. Wages Jr., would not give Marvin Wages an insurable interest in the life of John T. Wages Jr."

Since the court sufficiently charged the jury that the defendant would not be entitled to a verdict in his favor unless it was shown that he had an insurable interest in the life of the insured under the facts of the case, and the record does not show any contention that the fact that the relationship of the defendant to the insured as half first cousin constituted an insurable interest, the court did not err in failing to give the requested charge.

■ It could not be said under the evidence in this case that a finding was demanded as a matter of law that the policy was assigned solely to secure the defendant for the money advanced by him, or that the agreement constituted a wagering contract. The insured, as he had a right to do, procured a policy on his own life, in which he manifestly had an insurable interest, and for a period of about 12 years paid the premiums out of his own funds. Although, at the time the defendant advanced money for payment of an outstanding loan, the policy had lapsed, yet the insured still had the right to control the policy and to cause the company to reinstate it. The defendant could not originally have caused the policy to issue with himself as beneficiary, but it would be unreasonable to say that, though the insured procured the policy himself, he did so with an intention to place its benefits in the defendant 12 years later and thus circumvent the law. Certainly, after maintaining the policy 12 years, the insured, as the rightful owner thereof, could legally agree for the defendant to become the beneficiary in consideration of money advanced by him and his agreement to pay future premiums on the policy.

The evidence, though sharply conflicting as to whether it was the intention of the insured that the defendant retain the total proceeds of the policy or only the amount of the money advanced and paid by him, was sufficient to support the verdict in favor of the defendant for the full amount of the proceeds of the policy, and the court did not err in overruling the plaintiff's motion for a new trial.

*Judgment affirmed on both the main and cross-bill of exceptions. All the Justices concur.*